Connie C. **RESHARD** and Leroy Reshard, Co-personal Representatives of the Estate of Minnie Lee Reshard on Behalf of the Estate and certain Survivors, Plaintiffs-Appellants,

v.

Dr. Earl **BRITT**, Dr. George Bonk, et al., Defendants-Appellees.

No. 86–3641.

United States Court of Appeals, Eleventh Circuit.

June 26, 1987.

---

Connie Reshard, pro se.

Richard B. Collins, Collins, Dennis & Williams, Tallahassee, Fla., for Dr. Earl Britt.

Richard Smoak, Sale, Brown & Smoak, Panama City, Fla., for Dr. George Bonk.

P. Scott Mitchell, Fuller & Johnson, Tallahassee, Fla., for Dr. David Moore.

William H. Davis, Wadsworth & Davis, Tallahassee, Fla., for Tallahassee Community Hosp.

Before RONEY, Chief Judge, EDMONDSON, Circuit Judge, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This case presents two rather novel issues for review by this court. It involves an action brought in a *pro se* capacity, in Federal Court, under § 1654 of 28 U.S.C. First, we are called upon to determine whether a district court's order is immediately appealable within the meaning of 28 U.S.C. § 1291 and the collateral order doctrine; and second, whether plaintiffs, designated as co-representative parties of the decedent's estate and the real parties in interest, may bring a wrongful death action in Federal Court, under diversity of citizenship jurisdiction, on a *pro se* basis. The district court ruled that Connie Reshard and Leroy Reshard, as co-personal representatives of the estate of Minnie Reshard, could not proceed on a *pro se* basis in their representative capacity on behalf of the estate and were therefore ordered to obtain counsel; the court then stayed all further proceedings until they did so. From this order, the Reshards filed an appeal.

## BACKGROUND

Connie C. Reshard and Leroy C. Reshard, duly appointed, co-personal representatives of the estate of the decedent, Minnie Reshard,[1] brought a wrongful death action in Federal Court under diversity of citizen-

---

1. The Circuit Court for Leon County, Florida, probate division, issued letters of administration appointing Leroy D. Reshard and Connie C. Reshard as personal representatives of the estate of decedent, Minnie L. Reshard.

ship jurisdiction, on behalf of the decedent's estate and certain survivors,[2] against Dr. Earl Britt, Dr. George Bonk, Dr. Chuck Chokhawala Pankha, Dr. David Moore, the Tallahassee Medical Center, Inc., d/b/a Tallahassee Community Hospital and the Tallahassee Memorial Regional Center. The plaintiffs brought this action on a *pro se* basis, as the representative parties of the decedent's estate.[3] In their complaint, the plaintiffs allege that various acts of the defendants caused the death of the decedent; however, the specific acts surrounding the care and treatment of the decedent are not pertinent issues to this appeal, and therefore, will not be discussed herein.[4] After the commencement of the lawsuit, defendant Britt moved to dismiss the complaint, on the grounds that the plaintiffs were not real parties in interest. The court, however, issued an order on January 30, 1986, finding that the case was grounded on diversity of citizenship and that the plaintiffs were the real parties in interest.[5]

In the same order, the court denied other pending motions, by Dr. Britt and other defendants. Thereafter, the parties proceeded with discovery in the case. The court ordered all discovery to be completed by September 4, 1986. A discovery conference was held on June 26, 1986 and all parties were ordered to file discovery plans by July 25, 1986. The pre-trial conference was set for November 13, 1986 and the trial was scheduled to begin on December 8, 1986.

At all times therein, the plaintiffs continued to proceed "personally," in their capacity as *pro se* plaintiffs, acting for the benefit of the estate of the decedent and certain survivors. Various discovery disputes arose during the course of pre-trial dis-

2. The complaint alleged that this cause of action was brought on behalf of the Estate of Minnie Lee Reshard and Survivors. Those named as survivors were Brenda Lee Reshard, minor daughter of the decedent, age 22; a grandson Nicholas, 2 years of age, son of Brenda Reshard; Wilbur Reshard, minor son of the decedent, 22 years of age and Thomas Reshard, the decedent's father. All potential beneficiaries of a recovery for wrongful death, including the decedent's estate, must be identified in the complaint, F.S. § 768.21 (1985). The plaintiffs brought this action as the co-personal representatives of the decedent's estate, pursuant to Section 768.20 of the Florida Code. It states:

The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivor and estate all damages, as specified in this act, caused by the injury causing death.

F.S. § 768.20 (1985).

3. The right to bring an action in federal court, in a *pro se* capacity, is found at 28 U.S.C. § 1654. It states:

*Appearance personally or by counsel*

In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

Of course, whether the plaintiff may bring this action as the co-personal representatives of the decedent's estate, on a *pro se* basis, is the issue on appeal. We will address this issue, *infra*, after we have determined the appealability of the district court's order.

4. The decedent, Minnie Lee Reshard, died of cardiac tamponade on August 6, 1983. On August 2, 1983, she was admitted to the Tallahassee Community Hospital (TCH) for emergency medical treatment of severe pain in her chest and legs. The decedent was taken to TCH, a limited facility for major cardiac treatment, rather than the Tallahassee Memorial Regional Medical Center, a fully equipped facility for major cardiac treatment, because the staff privileges of her attending physician, Dr. Earl Britt, had been terminated. The plaintiffs claimed that the negligence of the hospital, and physicians, in failing to properly diagnose the decedent's cardiac impairment and to provide her adequate medical treatment, was the cause of the decedent's death. Moreover, the plaintiffs alleged that Tallahassee Memorial, breached its duty to notify the public and the decedent, that all emergency cardiovascular treatment should be brought to Tallahassee Memorial. The district court granted the defendant Tallahassee Memorial's motion to dismiss, ruling that, assuming there was such a duty, the plaintiffs could not show that the alleged breach was a cause of Mrs. Reshard's death.

5. In his motion to dismiss, defendant Britt claimed that diversity jurisdiction did not exist because the plaintiffs, as the decedent's survivors were residents of the State of Florida. However, the district court concluded, that in wrongful death cases the residency of the co-personal representatives, rather than the named survivors, is used to determine diversity jurisdiction, citing *Bush v. Carpenter Brothers*, 447 F.2d 707 (5th Cir.1971). Because the personal representatives were not residents of the State of Florida, the court held that diversity jurisdiction existed.

covery, and the court had before it various motions pertaining to discovery abuses, the ethical conduct of lawyers and a motion requesting that the plaintiffs be required to obtain counsel. The district court, then issued a notice of hearing, to entertain all motions pending before it, to be held on September 2, 1986. Thereafter, on September 2, 1986, the court entertained defendant Britt's motion, that the plaintiffs be required to obtain counsel. After hearing argument from counsel for Dr. Britt, and Ms. Connie Reshard, on representing herself, as co-plaintiff, and the estate and its survivors, the court made an oral ruling from the bench, ordering the *pro se* plaintiffs to obtain counsel. Thereafter, by written order of September 8, 1986, the court issued an order requiring the plaintiffs to obtain counsel by October 6, 1986 and stayed all further proceedings until that time. In its September 8th order, the court disqualified the plaintiffs from proceeding *pro se* in the wrongful death action on the basis that the right to proceed *pro se* under § 1654 of 28 U.S.C., applied only to one's own case, and that under Florida's wrongful death statute, a wrongful death action is an an action on behalf of the decedent's estate and is not personal to the representative party. The court concluded that the action was not the "plaintiffs' own claim and they must obtain counsel." The court also said that its decision was supported by Rule 5.030 of the Florida Rule of Probate and Guardianship Procedure. The court stated "that rule provides that every personal representative shall be represented by an attorney unless the personal representative remains the sole interested person." [6] Since there were a number of po-

tential beneficiaries, in addition to the named plaintiffs, who "must be considered interested parties," the court concluded "it would be inappropriate for plaintiffs to proceed pro se."

The co-personal representatives sought an expedited appeal to this Court, asserting jurisdiction under 28 U.S.C. § 1291, as a final order under the collateral order doctrine. In their emergency motion to expedite, the plaintiffs argued that a delay, or failure to grant their requested relief, would cause them irreparable injury. They alleged that the relief sought involved the denial of the fundamental right of any party in the courts of the United States, to proceed "personally in their own behalf," and to defer the appeal until the case was fully adjudicated, "would destroy any effective redress the Petitioners would have on future appeal."

This Court granted the appellants' motion to expedite the appeal, and stayed the district court's order disqualifying the parties from appearing *pro se*. At the outset, both parties anticipated a jurisdictional hurdle, and we instructed the parties to address the issue: whether the "district court's order is appealable pursuant to 28 U.S.C. § 1291 or is otherwise within the Court's jurisdiction."

Both parties have briefed and orally argued this issue, and thus we now turn to the "appealability" of the district court's order to determine whether this Court has jurisdiction.

## THE APPEALABILITY

The appellants argue that the right of a party to proceed without counsel, under 28

---

**6.** Rule 5.030(b) of the Probate and Guardianship Rules states:

> Every guardian and every personal representative, unless the personal representative remains the sole interested party therein, shall be represented by an attorney admitted to practice in this state. If the guardian or personal representative is an attorney admitted to practice in this state, he may represent himself as guardian or personal representative.

We note, as the appellants point out, that the above rule is a part of the Florida rules on probate and guardianship procedure, as set

forth in Chapter 738, Appendix I, Rules of Probate and Guardianship Procedure.

Rule 5.010 sets forth the scope of these rules. It states:

> These rules govern the procedure in all probate and guardianship proceedings and shall be known and cited as the Rules of Probate and Guardianship Procedure and may be abbreviated as "PGR." Part I of these rules applies to both probate and guardianship procedure....

The Rule 5.030 as cited by the district court, is found in Part I of this section, applying to probate and guardianship procedure.

U.S.C. § 1654, is an unqualified right, which is fundamental to our system of democracy and too important to be deferred until the entire case is concluded, citing *O'Reilly v. New York Times*, 692 F.2d 863, 867 (2nd Cir.1982).

This right, they contend, is not entirely about choice of counsel, but rather, involves the exercise of a clear, unqualified right. They note that this right of self representation has roots deep in the nation's history.[7] Moreover, this statutory right to proceed *pro se*, they assert, is in no way involved in the merits of this particular case; whether the plaintiffs may proceed "personally" in their capacity as the representative parties and the real parties in interest, they contend, is entirely separate from the merits of the wrongful death action. Thus, the appellants argue, the right to proceed *pro se* in this action is collateral to the main action, and the question of the appealability of the district court's order, disqualifying them from appearing *pro se*, is determined by the application of the collateral order doctrine pursuant to 28 U.S.C. § 1291, the final judgment rule.

## THE COLLATERAL ORDER DOCTRINE

A final decision within the meaning of Section 1291, does not mean the last order to be made in a case, but orders which are collateral to the main action and are separate from the merits of the case, are appealable under what is known as the "collateral order doctrine," first enunciated by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In *Cohen*, the Supreme Court held that an order, which involves a final disposition of a claimed right, which is not an ingredient of the cause of action and does not require separate consideration with it, is an appealable order within the meaning of § 1291.[8] The Court noted that such orders

> fall in that small class which finally determined claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

337 U.S. 546, 69 S.Ct. 1225. Subsequently, in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), the Court applied the test enunciated in *Cohen*. Under *Coopers*, an order comes within the *Cohen* doctrine, if it "conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the case, and [is]

**7.** The appellants point to the Supreme Court's discussion about the history of the right to self representation in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), quoting *Faretta* in part:

> In the federal courts, the right of self representation has been protected by statute since the beginning of our nation.... The right of self representation was guaranteed in many colonial charters and declaration of rights. These early documents established that "right to counsel" meant to the colonists a right to choose between pleading through a lawyer and representing oneself.

Although *Faretta* involved the constitutional right to self representation in state criminal trials, the court engaged in a long historical account on the roots of self representation, implicit in the constitution, and explicitly established by statute, as well. We note, particularly, the court's statement about the origin of 28 U.S.C. § 1654. The court said:

> Section 35 of the Judicial Act of 1789, 1 Stat. 73, 92, enacted by the First Congress and

signed by President Washington one day before the Sixth Amendment was proposed, provided that in "all the courts of the United States, the parties may plead and manage their own causes personally or by the assistance of ... counsel...."

> The right is currently codified in 28 U.S.C. § 1654.

422 U.S. 812–813, 95 S.Ct. at 2530.

As will be discussed herein, the nature and importance of the right of self representation, is important in determining when an alleged denial of that right, should be heard on appeal.

**8.** *Cohen* involved a stockholder's action, in which a federal district court refused to apply a state statute requiring the plaintiffs in such cases to post security for defendant's costs, including attorney's fees. The Supreme Court held unanimously that the order, denying the defendant's motion to post security, was immediately appealable.

effectively unreviewable on appeal from the final judgment."

Although the Supreme Court has held that orders disqualifying attorneys in civil and criminal cases are not immediately appealable under the collateral order doctrine, the question whether the granting of a motion disqualifying a party from proceeding *pro se* in a civil action is immediately appealable has not been decided by the Court.

First, beginning with *Firestone Tire and Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), the Court held that an order *denying* a motion to disqualify counsel for the opposing party in a civil case, was not immediately appealable under 28 U.S.C. § 1291, because the order did not satisfy the third requirement of the collateral order doctrine; the appellant was unable to show that such orders would not be effectively reviewable on appeal after final judgment. At that time, the Court left open the question whether an order *granting* a motion to disqualify counsel in a civil case, was final, and therefore, immediately appealable. In *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), the Court held that the *granting* of a motion disqualifying defendant's counsel in a criminal case, was not immediately appealable under the collateral order doctrine. Again, the Court held that the order failed to meet the third requirement of the collateral order exception—that it was not effectively unreviewable on appeal from a final judgment. Subsequently, the Supreme Court held that an order *granting* a motion to disqualify counsel in a civil case was not immediately appealable under the collateral order doctrine, in *Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985). In *Koller,* the Court concluded that disqualification of counsel issues are not completely separate from the merits of the case, and thus, are not imme-

diately appealable.[9] Moreover, the Court stated that:

> [i]f establishing a violation of one's right to counsel of choice in civil cases requires no showing of prejudice, then a pretrial order violating one's right to counsel does not meet the third condition for coverage by the collateral order exception: it is not "effectively unreviewable on appeal from final judgment. 465 U.S. at 268, 79 L.Ed.2d 288, 104 S.Ct. 1051. Absent a requirement of prejudice, the propriety of the trial court's order can be reviewed as effectively on appeal of a final judgment, as an interlocutory appeal."

105 S.Ct. at 2765

The Court in *Koller* was addressing the Court of Appeals reliance on a showing of prejudice, to demonstrate the unreviewability of a civil disqualification order. The Court, however, reasoned that if prejudice was a prerequisite to reversal, then disqualification orders were not sufficiently separate from the merits of the case to qualify for interlocutory appeal. The Court also noted that it had "never held that prejudice was a prerequisite to a reversal of a judgment following erroneous disqualification of counsel in either criminal or civil cases." 105 S.Ct. at 2767.

The appellees argue that the disqualification of counsel cases decided by the Supreme Court, are analogous to an order disqualifying a party from proceeding *pro se* in a civil action, and thus, the same rationale compels a finding that the district court's order in the present case is not immediately appealable under the collateral order doctrine.

They contend, for example, that if the district court's order is erroneous, whether or not a showing of prejudice is required, then the order is effectively reviewable on appeal from a final judgment. Thus, according to the appellees, the order fails to meet the third requirement of the collateral order exception. Moreover, if prejudice is

---

**9.** The Supreme Court's ruling in *Koller* that orders disqualifying counsel in civil cases are not immediately appealable, resolved the conflict among many circuits on this issue, including the Eleventh. In *Banque De Rive, S.A. v. Highland*

*Beach Development Corp.,* 758 F.2d 559 (11th Cir.1985), this Court distinguished *Flanagan* and held that such orders were immediately appealable.

necessary for a reversal of the district court's order, then the appellees argue, the second requirement of the collateral order exception is not met: the only way to determine prejudice would be to review the entire proceedings and thus the order would not be separate from the merits of the action. The appellees therefore contend that the district court's order is not subject to immediate review, under the Supreme Court's ruling in *Koller*.

The appellants argue, however, that the cases are distinguishable; they assert that disqualification of counsel issues involving the choice of legal representation, although similar to the representation issues raised by a *pro se* party, are sufficiently distinguishable. Whether the plaintiffs may proceed *pro se*, is not entirely about the choice of counsel, they argue, but rather about the exercise of a clear, unqualified right. The appellants rely on the Second Circuit's decision in *O'Reilly v. New York Times*, 692 F.2d 863 (2d Cir.1982), to support their view that denials of motions to proceed *pro se* are immediately appealable. In *O'Reilly*, the court held that a motion disqualifying a party from appearing *pro se* under § 1654 of 28 U.S.C., was immediately appealable under the collateral order doctrine. The opinion analogized orders denying motions to disqualify counsel, which had been held unappealable under the collateral order doctrine, with orders denying motions to proceed *pro se*. The court considered that the practical effect of a denial of a motion to proceed *pro se*, was the same as that of the grant of a motion to disqualify —"namely the losing party must go forward in the litigation with representation not of his choosing." The court then stated: "[a]nalogies aside, direct application of the three part 'collateral order' test, set forth in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) and repeated in *Firestone*, points

toward the appealability of the order here at issue." (Citations omitted), 692 F.2d at 866. The Court noted that the only issue in doubt was the third element. But because of the difficulty of the plaintiff's burden in showing there would be prejudice from an erroneous denial of the statutory right of self representation, the court held that an order denying a motion to proceed *pro se* would be effectively unreviewable on appeal within the meaning of the *Cohen* doctrine.[10]

However, we recognize the difficulty in relying on *O'Reilly's* analysis, in light of the Supreme Court's opinion in *Koller*, that prejudice is not the *sine qua non* of the appealability of civil disqualification orders. We instead rely on the nature of the right of self representation, itself, to determine whether a denial of that right is immediately reviewable under the collateral order doctrine.

First, we must recognize that the right to proceed *pro se* under 28 U.S.C. § 1654, is a fundamental statutory right that is afforded the highest degree of protection. It is a right which is deeply rooted in our constitutional heritage, and although statutory in origin, "[i]ts constitutional aura is underscored by the proposal the very next day of the Sixth Amendment," to the U.S. Constitution.[11] *United States v. Dougherty*, 473 F.2d 1113, 1123 (1972). Moreover, as the *O'Reilly* court pointed out, it "is a right of high standing, not simply a practice to be honored or dishonored by a court depending on its assessment of the desiderata of a particular case." *O'Reilly v. New York Times*, 692 F.2d 863, 867 (1982).

The question, now before us, is when can an alleged infringement of this time-honored right, be heard on appeal? Must it await the final judgment of a case, or can it be reviewed immediately under

---

**10.** The Second Circuit noted that the plaintiffs' burden on appeal from an adverse judgment would be greatly lightened if there was a presumption of prejudice from an erroneous denial of the statutory right to self representation. Although some courts had held there was such a presumption in criminal cases, *see, e.g., United States v. Plattner*, 330 F.2d 271, 273 (2nd Cir. 1964), the court stated that it knew of no author-

ity suggesting any such presumption in a civil case.

**11.** We have noted previously, *supra* note 7, that the statutory right to proceed *pro se* was enacted before the Sixth Amendment to the United States Constitution.

the collateral order doctrine of Section 1291. We believe that a district court's order disallowing a party from proceeding *pro se,* fits squarely in the *Cohen* doctrine as a collateral order exception to the final judgment rule. First, we note that the Supreme Court has given Section 1291, a practical, rather than a technical construction. In finding the district court's order in *Cohen* immediately appealable as a collateral order, the Supreme Court stated: "The Court has long given this provision of the statute [Section 1291] *this* practical rather than a technical construction." 337 U.S. at 546, 69 S.Ct. at 1225. Later, in *United States v. Wood,* 295 F.2d 772 (5th Cir. 1961),[12] the former fifth Circuit held:

> We feel that the Supreme Court has approved a practical construction of Section 1291 and that an order, otherwise nonappealable, determining substantial rights of the parties, which will be irreparably lost if review is delayed until final judgment, may be appealed immediately under 1291.

In *Wood,* the Court held that the denial of a temporary restraining order was immediately appealable under 28 U.S.C. 1291, and the collateral order doctrine, because the order sought to enjoin a state criminal prosecution of a black citizen in Mississippi, which was designed to intimidate black citizens from registering to vote.

With that practical construction of Section 1291 and the finality doctrine in mind, we also note that the Supreme Court has held that the denial of a motion to proceed in forma pauperis, is an appealable order under § 1291 and the collateral order doctrine. *Roberts v. U.S. District Court,* 399 U.S. 844, 845, 70 S.Ct. 954, 94 L.Ed. 1326 (1950).

If the denial of a motion to proceed in forma pauperis,[13] is an appealable order under the collateral order doctrine, where a leave to proceed in forma pauperis is recognized as a privilege, and not a right, *see, e.g., Smart v. Heinze,* 347 F.2d 114 (9th Cir.1965), *cert. denied,* 382 U.S. 896, 86 S.Ct. 192, 15 L.Ed.2d 153, then, the denial of a statutory right to proceed *pro se,* must be immediately appealable under the Supreme Court's ruling in *Cohen v. Beneficial Trust* and the collateral order doctrine. The rationale of both cases compels the same result. In the denial of a motion to proceed in forma pauperis, the moving party must either obtain the funds needed to proceed with the case, thus losing the privilege of proceeding in forma pauperis, or not proceed at all. Similarly, with the denial of a motion to proceed *pro se,* the losing party must either pay the amount necessary to obtain counsel or obtain free counsel, in order to proceed in the action, or to forego bringing the action all together. The consequences of not allowing immediate review of an order denying a motion to proceed *pro se* should be readily apparent; the court forces the losing party to obtain counsel not of his or her choosing, in order to proceed with the case, thus rendering the right to represent one's self almost a nullity. Moreover, the practicality of review after the trial, seems almost insurmountable. How can a party demonstrate that he or she would have prevailed, had there been an opportunity to represent one's self at trial? By what standards are we to determine whether or not a party is prejudiced by a denial of the right of self representation?[14] There are salient factors in the right to represent one's self in court, which cannot be measured by any objective factors, in determining the out-

---

**12.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this Court adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

**13.** The right to proceed in forma pauperis is found at 28 U.S.C. § 1915:

> (a) Any Court of the United States *may* authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security there-

for, by a person who makes affidavit that he is unable to pay such costs or give security therefor.... (emphasis added.)

**14.** The former Fifth has held that an error in denying one's statutory right to plead and conduct one's own case personally, or by counsel, does not warrant reversal in the absence of prejudice. *Juelich v. United States,* 342 F.2d 29 (5th Cir.1965). *Juelich,* however, was a criminal case.

come of litigation from a party's *pro se* representation. In this regard, we believe that an order granting a motion disqualifying a party from proceeding *pro se*, cannot be "effectively reviewed on appeal" after final judgment, and therefore, should be immediately reviewable as a collateral order, under the *Cohen* doctrine.

## THE MERITS

Having determined that the district court's order disqualifying the plaintiffs from proceeding *pro se* is an immediately appealable order, we now turn to the merits of this appeal. We must determine, whether the district court erred in disqualifying the plaintiffs from appearing *pro se* in federal court in the Florida wrongful death action.

The district court was of the opinion that the wrongful death action was an action on behalf of the decedents' estate and survivors, and was not personal to the representative parties. Since it was not their cause of action, the district court concluded, the plaintiffs could not appear in a *pro se* capacity.

The district court also felt that it was "supported by Rule 5.03 [sic] of the Florida Rules of Probate and Guardianship," which provides that "every personal representative, unless the personal representative remains the sole interested party therein, shall be represented by an attorney admitted to practice in the state." Rule 5.030(b), Fla.R.P. & G.P.

The appellants contend that the district court erred in several respects. First, the appellants argue that the district court erred when it concluded that the plaintiffs could not bring this action personally, because it was not their "own case" under 28 U.S.C. § 1654. The appellants argue that under Florida's Wrongful Death Act, F.S. § 768.20, they are not only entitled to bring this action as the "personal representative of the decedent's estate" but they are the *only* persons who are capable of bringing this action. They note that there are no further restrictions in this grant of authority, and as the personal representatives, they "shall recover for the benefit of the decedent survivors and estate all damages as specified in this Act...." [15] Next, the appellants note that the district court had already recognized the appellants as the corepresentatives of the decedent's estate, and as the real parties in interest. This they contend is consistent with Rule 17(a) of the Federal Rules of Civil Procedure which provides that: "Every action shall be prosecuted in the name of the real party in interest." Thus, the appellants argue that as the real parties in interest, they have a right to proceed personally to pursue this action on behalf of themselves, the estate, and designated beneficiaries.

Answering the possible concern of the trial court that, if permitted to represent themselves *pro se* they might injure other beneficiaries, they point out they are like trustees, who stand in a fiduciary relationship to the beneficiaries of the estate. They emphasize that the fiduciary nature of their representative capacity not only confers upon them complete control over the assets and liabilities of the decedent's estate, but also makes them liable for failure to "observe the standards of care applicable to trustees as described by § 737.-302," F.S. § 733.602.

■ Aside from a futile effort to support the trial court's decision based on the Florida probate rule requiring other counsel except in case of a single beneficiary in probate matters,[16] there can be no dispute as to applicability of the federal statute in this diversity case. It is a procedural statute, and must be followed in such a case under *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The federal statute provides that "In all courts of the United States the parties may

---

**15.** F.S. 768.20 provides:

Parties.—The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death....

**16.** That this rule is restricted to matters of probate and guardianship is specifically provided in the rule which is set out in full in n. 6, *supra*.

plead and conduct *their own cases personally or by counsel....*" (Emphasis added.) Since we hold that this statute applies in this case we must next determine whether this is the Reshards' "own case." Assuming, as contended by appellees, that the capacity of an individual acting in a representative capacity to sue is to be determined by state law, it is clear that Florida state law gives such capacity to the appellants. As expressly provided in the applicable statute:

"The action [for wrongful death of a decedent] shall be brought by the decedent's personal representative" for the benefit of survivors and the estate.

The capacity of plaintiffs to sue in this action could not be more clearly stated.

The trial court, apparently feeling that in suing for the benefit of themselves and others the appellant might jeopardize the interests of the other survivors or creditors of the estate, determined that this was not the Reshards' "own case." We disagree. As previously noted, the Florida statutes require that in probate and guardianship matters an individual can represent himself or herself only if such person is the "sole interested party." *State of Florida ex rel. Arthur Falkner Relator v. Blanton, Circuit Judge of Dade County, Probate Division,* 297 So.2d 825 (1974).[17]

The reason for this is quite apparent. Until a representative of the estate has been appointed, the moving parties in the probate court have given no bond for their faithful conduct of the litigation. At such a time, they are responsible to no one but to themselves as litigants. Such a situation is not true, however, after their appointment because thereafter, they are bonded to be fully responsive to the beneficiaries of the estate. Obviously, this is not a case in the probate court. The statute has no application.

Since, under Florida law, the representative parties are the only persons who may bring this cause of action on behalf of a decedent's estate and survivors, *see, e.g.,*

*Gregg v. Metropolitan and Liability Ins. Co.,* 595 F.Supp. 529 (S.D.Fla.1984), then it is the representative party's "own case" for the benefit of the estate and survivors, for purposes of *pro se* appearance under Section 1654 of 28 U.S.C. Under Florida law, the plaintiffs are the duly appointed personal representatives of the estate of Minnie Reshard, and it is they alone, who have the capacity to bring this action on behalf of the estate and its survivors.

The Florida legislature has expressed its will, that in all probate and guardianship proceedings, "every guardian and every personal representative, unless the personal representative remains the sole interested party therein, must be represented by an attorney admitted to practice in Florida." Obviously, the state has seen fit to assert its power to protect the interests of those who may be affected by those proceedings. However, nowhere does the legislature say, outside the realm of probate and guardianship, that a personal representative *must* obtain an attorney in order to proceed in a civil action such as a wrongful death action. The legislature does say that the personal representative shall recover for the estate and survivors in a wrongful death action, thereby protecting the interests of other interested parties.

Moreover, we believe that there are enough safeguards in the duties and responsibilities of the personal representative, as prescribed by Florida statute, to protect the interests of the estate and survivors. First, Florida law provides that the personal representative is a "fiduciary, who shall observe the standards of care applicable to trustees as described by § 737.302." F.S. § 733.602. Thus, the personal representative stands in a fiduciary relationship with the estate and must exercise reasonable care in representing the estate in matters on behalf of the estate. Second, we note that if the representative party's exercise of power concerning the estate is *improper* or in *bad faith,* then the personal representative is liable to interested per-

---

**17.** While it is irrelevant to the issues in this case, we note that in their probate proceedings in which they were appointed personal repre-

sentatives of the decedent, outside counsel was retained.

sons for damages or loss resulting from a breach of his fiduciary duty to the same extent as is a trustee of an express trust. F.S. § 733.609.

The right of a party to bring an action in federal court under 28 U.S.C. § 1654, is a right which is accorded the highest degree of protection. It is, as the Court said in *Faretta v. California,* the "basic right of free people." 422 U.S. 806, 95 S.Ct. 2525.

Since we have concluded that this action is, within the language of § 1654, the Reshards' "own case," the trial court was in error in requiring that they obtain outside counsel in order to proceed.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

RONEY, Chief Judge, dissenting in part:

I respectfully dissent from the decision that a nonlawyer personal representative may proceed *pro se* to litigate a wrongful death action. State laws do not control the question regarding who may take advantage of a federal statutory right to proceed *pro se* in a federal court. The controlling law in this case is 28 U.S.C.A. § 1654 and federal courts have consistently interpreted this section to prohibit *pro se* litigation by a nonlawyer in a representative capacity.

It is unquestioned that section 1654 grants to certain litigants the right to "plead and conduct their own cases personally." To benefit from this statutory grant, however, the party must be litigating an interest which is personal to him. The theoretical underpinning of this requirement is that the party making this choice will be the only person to suffer the consequences if his attempts fail. *See Faretta v. California,* 422 U.S. 806, 819–20, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975) (explaining the basis for granting the Sixth Amendment right to self-representation directly to the defendant).

Four facts are critical in this case. *First,* Connie C. Reshard appears in this case in her representative capacity only. *Second,* Reshard's personal interest in this action derives solely from her status as a survivor of Minnie Lee Reshard. *Third,* Reshard's personal interest in competently satisfying her fiduciary duty to the Estate of Minnie Lee Reshard as a personal representative is not an issue in this suit. *Fourth,* the personal interests of the estate, other survivors, and possible creditors will be affected by the outcome. The facts of this case lead overwhelmingly to the conclusion that Reshard will be litigating interests which are not personal to her.

Federal courts have consistently held that nonlawyer litigants may not appear *pro se* on behalf of corporations, *see, e.g., Osborn v. United States Bank,* 22 U.S. (9 Wheat.) 738, 824, 6 L.Ed. 204 (1824) (corporations may only appear by attorney) and *National Ind. Theatre v. Buena Vista Distribution,* 748 F.2d 602, 609 (11th Cir. 1984), cert. denied, 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985) (section 1654 precludes a nonlawyer sole shareholder from appearing on behalf of a corporation); on behalf of partnerships, *see, e.g., Turner v. American Bar Ass'n,* 407 F.Supp. 451, 476 (N.D.Tex.1975), *but see United States v. Reeves,* 431 F.2d 1187 (9th Cir.1970) (allowing action because Alaska law granted each partner a specific right in partnership property); in shareholder derivative suits, *see, e.g., Phillips v. Tobin,* 548 F.2d 408, 411 (2d Cir.1976), *but see Willheim v. Murchison,* 206 F.Supp. 733 (S.D.N.Y.1962); on behalf of other class members in class actions, *see, e.g., McShane v. United States,* 366 F.2d 286 (9th Cir.1966); and on behalf of unincorporated associations or organizations, *see, e.g., MOVE Organization v. United States Dept. of Justice,* 555 F.Supp. 684, 692–93 (E.D.Pa.1983). The relationships between the groups and legal entities cited above and their nonlawyer representatives are factually similar to the relationship created between a personal representative and the estate by Fla.Stat. Ann. § 768.20. That section merely consolidates the interests of several classes of potential litigants for procedural convenience and avoids piecemeal litigation by allowing all their interests to be litigated at once. *See Martin v. United Security Ser-*

*vices, Inc.*, 314 So.2d 765, 767–68 (Fla. 1975).

No reported case has been found, in any state or federal court, addressing the precise issue presented here. State courts have consistently held, however, that personal representatives must appear in probate courts through an attorney. *See Annotation, Necessity that Executor or Administrator be Represented by Counsel in Presenting Matters in Probate Court,* 19 A.L.R.3rd 1104. The exceptions to this general proposition include cases where the services are not in the nature of the practice of law and where personal rights as a personal representative are concerned. Neither of these exceptions appear here.

Florida alone provides the additional exception where the personal representative is also the sole beneficiary of the estate and no creditors' interests are involved. *See State ex. rel. Falkner v. Blanton,* 297 So.2d 825 (Fla.1974); and *In Re Estate of Jeffress,* 301 So.2d 25 (Fla. 2d DCA 1974). These circumstances are also not present in this case.