RICHARDSON-MERRELL INC. *v.* KOLLER, AN INFANT,
BY AND THROUGH KOLLER ET UX., HER NATURAL
GUARDIANS, ET AL.

No. 84–127.   Argued February 26, 1985—Decided June 17, 1985

O'CONNOR, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, MARSHALL, BLACKMUN, and REHNQUIST, JJ., joined. BRENNAN, J., filed a concurring opinion, *post*, p. 441. STEVENS, J., filed a dissenting opinion, *post*, p. 442. POWELL, J., took no part in the decision of the case.

*Lawrence E. Walsh* argued the cause for petitioner. With him on the briefs were *Guy Miller Struve, Ogden N. Lewis, Whitney L. Schmidt, Vincent H. Cohen, Robert B. Cave,* and *Richard C. Ford.*

*Michael H. Gottesman* argued the cause for respondents. With him on the brief were *Robert M. Weinberg, Jacob A. Stein,* and *Robert F. Muse.**

JUSTICE O'CONNOR delivered the opinion of the Court.

Last Term, in *Flanagan* v. *United States*, 465 U. S. 259 (1984), the Court unanimously held that pretrial orders disqualifying counsel in criminal cases are not subject to im-

---

*\*Jonathan D. Blake, Charles S. Sims, Burt Neuborne,* and *Arthur B. Spitzer* filed a brief for the Washington Post et al. as *amici curiae* urging affirmance.

mediate appeal under 28 U. S. C. § 1291. In this case, the Court of Appeals for the District of Columbia Circuit held that § 1291 confers jurisdiction over interlocutory appeals of orders disqualifying counsel in a civil case. 237 U. S. App. D. C. 333, 737 F. 2d 1038 (1984). Because we conclude that orders disqualifying counsel in a civil case are not collateral orders subject to immediate appeal, we reverse.

I

Respondent Anne Koller (hereafter respondent) was born without normal arms or legs in a District of Columbia hospital in 1979. She filed suit in the United States District Court for the District of Columbia, alleging that petitioner Richardson-Merrell, Inc., is liable for her birth defects. The complaint alleged that respondent's mother, Cynthia Koller, had taken the antinausea drug Bendectin during the early stages of her pregnancy, and that the drug had caused Anne Koller's injuries. Petitioner is the manufacturer of Bendectin.

Respondent was initially represented by Cohen & Kokus, a Miami law firm, and by local counsel in Washington. As discovery progressed into 1981, however, a Los Angeles law firm, Butler, Jefferson, Dan & Allis, took the lead in trial preparation. James G. Butler entered an appearance *pro hac vice* for respondent on January 26, 1981; his partner Nicholas Allis was admitted *pro hac vice* on October 19, 1982. As the case neared trial in early 1983, respondent's counsel of record included at least eight lawyers from the Cohen firm, the Butler firm, and two Washington firms.

On December 22, 1982, Nicholas Allis' secretary, Krystyna Janowski, twice called the offices of Davis, Polk & Wardwell, Richardson-Merrell's attorneys. Janowski left messages indicating that Koller's suit was fraudulent and that Cynthia Koller had not taken Bendectin during the crucial early weeks of her pregnancy. App. 19–20. Janowski subsequently regretted her actions, and on December 26 she told

a paralegal at her firm that investigators for Richardson-Merrell had been attempting to persuade her to sign a statement indicating that Koller's case was fraudulent.

The next day, Allis twice went to see Janowski, first at a hospital where the secretary was visiting her child, and later at the secretary's apartment. During the second visit, Allis was accompanied by a private investigator who surreptitiously taped the conversation on a concealed tape recorder. Allis presented Janowski a typed statement indicating that "[a]t no time did I ever hear Cynthia Koller or anyone else say that Cynthia Koller did not take Bendectin." *Id.*, at 26–27. Janowski signed the statement. The following day, December 28, 1982, Allis received a copy of a letter that Davis, Polk & Wardwell had sent to the District Court. The letter recounted Janowski's telephone calls, informed the court that petitioner had engaged independent counsel for Janowski, and requested a hearing. *Id.*, at 21–22. Allis' firm responded with its own letter to the court. The letter recounted the story Janowski had told Allis. A copy of the statement obtained from Janowski was attached. *Id.*, at 23–25. During subsequent discovery into the matter, Janowski recanted the signed statement.

While the District Court and counsel were struggling with these unusual revelations, they were also preparing for an imminent trial. A pretrial hearing was scheduled to commence on January 31, 1983, and trial was to commence immediately upon the conclusion of the hearing. On January 17, 1983, the trial judge issued a pretrial ruling excluding collateral evidence related to two children who had birth defects like those of the respondent. The court ruled that it would not "grant plaintiffs a license to submit the birth defects of children whose only demonstrable relationship to Anne Koller is that they have suffered birth defects that are superficially similar." *Id.*, at 60–61. On January 28, 1983, James Butler submitted to the Food and Drug Administration a set of "Drug Experience Reports" prepared by his firm. The

reports described the birth defects of a number of children whose mothers had taken Bendectin, including the two children covered by the District Court's order of January 17. In an accompanying letter, Butler urged the FDA to take Bendectin off the market. Butler sent copies of the reports and his letter to a reporter for the Washington Post.

On January 31, 1983, the District Court ruled that it would not admit any "Drug Experience Reports" that were submitted to the FDA more than one year after the birth of the children involved. *Id.*, at 84–91. The 14 reports Butler had submitted to the FDA fell within this category. The following day, a Washington Post reporter interviewed Butler at the attorney's invitation. *Id.*, at 341. Butler discussed the *Koller* case and the materials he had sent to the FDA. On February 7, 1983, after the court had already called the February jury pool from which the *Koller* jury panel would likely be drawn, the Washington Post published a lengthy article discussing the *Koller* case and the Drug Experience Reports which the trial court had excluded from evidence.

In the wake of these events, the District Court postponed the trial and allowed further discovery concerning Janowski's allegations. In February 1983, petitioner moved to disqualify Butler, Allis, and their firm from the *Koller* case on the ground of their alleged misconduct. After a 4-day evidentiary hearing on the issue of whether respondent's law firm had improperly obtained Janowski's statement, the District Judge issued an order requiring Butler and Allis to show cause why they and their firm should not be disqualified. The show cause order identified two "alleged incidents of misconduct" as possible grounds for disqualification: Butler's release of information to the Washington Post in an effort to "prejudice the jury" and to "bring inadmissible evidence before the jury pool," and Allis' preparing and obtaining a statement from Janowski "without regard for the truth" of the statement in an effort to protect his firm's financial interest and to thwart an investigation. *Id.*, at 246–248.

Butler and Allis opposed disqualification and defended their conduct in testimony at a lengthy hearing. Nevertheless, on January 6, 1984, the District Judge found that Allis had attempted "to thwart a true investigation of a crucial witness" and that Butler's release of information to the media "was calculated to prejudice the defendant's case and circumvent the Court's prior rulings." App. to Pet. for Cert. 77a–78a. Noting that respondent's other counsel of record could provide competent representation, the court revoked the *pro hac vice* admissions of Butler and Allis and the appearance of their law firm. *Id.*, at 80a.

Respondent appealed the disqualification to the Court of Appeals for the District of Columbia Circuit, which stayed all proceedings in the trial court pending the outcome of the appeal.[1] App. 339. The Court of Appeals subsequently held that it had jurisdiction to entertain the appeal pursuant to 28 U. S. C. § 1291. On the merits, the panel held that the District Court's disqualification order was invalid and that the appearances of Allis, Butler, and their firm should be reinstated. 237 U. S. App. D. C. 333, 737 F. 2d 1038 (1984). We granted certiorari to review the Court of Appeals' jurisdictional ruling as well as its decision on the merits of the disqualification. 469 U. S. 915 (1984).

II

Title 28 U. S. C. § 1291 grants the courts of appeals jurisdiction of appeals from all "final decisions of the district courts," except where a direct appeal lies to this Court. The statutory requirement of a "final decision" means that "a party must ordinarily raise all claims of error in a single

___

[1] In their response to the District Court's order to show cause, Butler and Allis suggested that the court should certify any ruling disqualifying them for appeal pursuant to 28 U. S. C. § 1292(b). App. 253. Respondent apparently never moved for certification after the disqualification order of January 4, 1984. The sole basis for appellate jurisdiction asserted by respondent and by the Court of Appeals is 28 U. S. C. § 1291.

appeal following final judgment on the merits." *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U. S. 368, 374 (1981). As the Court noted in *Firestone*, the final judgment rule promotes efficient judicial adminstration while at the same time emphasizing the deference appellate courts owe to the district judge's decisions on the many questions of law and fact that arise before judgment. *Ibid.; Flanagan* v. *United States*, 465 U. S., at 263–264. Immediate review of every trial court ruling, while permitting more prompt correction of erroneous decisions, would impose unreasonable disruption, delay, and expense. It would also undermine the ability of district judges to supervise litigation. In § 1291 Congress has expressed a preference that some erroneous trial court rulings go uncorrected until the appeal of a final judgment, rather than having litigation punctuated by "piecemeal appellate review of trial court decisions which do not terminate the litigation." *United States* v. *Hollywood Motor Car Co.*, 458 U. S. 263, 265 (1982).

An order disqualifying counsel in a civil case is not a final judgment on the merits of the litigation. There has been no trial or final judgment in this case, and indeed the stay imposed by the Court of Appeals assures that there can be none pending the outcome of these interlocutory proceedings. Section 1291 accordingly provides jurisdiction for this appeal only if orders disqualifying counsel in civil cases fall within the "collateral order" exception to the final judgment rule. In *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, 546 (1949), the Court recognized an exception to the final judgment rule for a "small class" of prejudgment orders which "finally determine claims of right separable from, and collateral to, rights asserted in the action, [and are] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

The collateral order doctrine is a "narrow exception," *Firestone, supra,* at 374, whose reach is limited to trial court

orders affecting rights that will be irretrievably lost in the absence of an immediate appeal. See *Helstoski* v. *Meanor*, 442 U. S. 500, 506–508 (1979); *Abney* v. *United States*, 431 U. S. 651, 660–662 (1977). To fall within the exception, an order must at a minimum satisfy three conditions: It must "conclusively determine the disputed question," "resolve an important issue completely separate from the merits of the action," and "be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand* v. *Livesay*, 437 U. S. 463, 468 (1978). Our recent decisions have strictly applied this test when parties pursued immediate appeal of trial court rulings on motions to disqualify counsel.

In *Firestone, supra,* the Court held that a trial court order denying a motion to disqualify counsel in a civil case was not subject to immediate appeal. The Court assumed without deciding that such a ruling resolves an important issue completely separate from the merits, and thus meets the second part of the *Coopers & Lybrand* test. 449 U. S., at 376. Nevertheless, the Court refused to permit an interlocutory appeal because it found an order denying disqualification to be reviewable on appeal after a final judgment. JUSTICE MARSHALL's opinion for the Court observed:

> "An order refusing to disqualify counsel plainly falls within the large class of orders that are indeed reviewable on appeal after final judgment, and not within the much smaller class of those that are not. The propriety of the district court's denial of a disqualification motion will often be difficult to assess until its impact on the underlying litigation may be evaluated, which is normally only after final judgment. *The decision whether to disqualify an attorney ordinarily turns on the particular factual situation of the case then at hand, and the order embodying such a decision will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits." Id.,* at 377 (emphasis added).

*Firestone* expressly left open the issue of whether orders *granting* disqualification are subject to immediate appeal, as well as the issue of whether orders denying disqualification in a criminal case fall within the collateral order exception. *Id.*, at 372, n. 8.

*Flanagan* v. *United States, supra,* decided one of the issues left open in *Firestone.* There the Court held that a district court's pretrial order granting disqualification of defense counsel in a criminal case was not immediately appealable under § 1291. The unanimous opinion in *Flanagan* emphasized the strong interest of both the parties and society as a whole in speedy resolution of criminal cases. This important interest counsels application of the final judgment rule with "utmost strictness." 465 U. S., at 265. The Court then applied the standards enunciated in *Coopers & Lybrand* and concluded that criminal disqualification orders do not qualify for immediate appeal.

Since *Flanagan* was decided, the Courts of Appeals have divided on the appealability of orders disqualifying counsel in a civil case. Compare *Gibbs* v. *Paluk,* 742 F. 2d 181, 184 (CA5 1984) (rejecting appeal pursuant to § 1291 in reliance on *Flanagan*), and *Kahle* v. *Oppenheimer & Co.,* 748 F. 2d 337 (CA6 1984) (rejecting appeal of order disqualifying counsel who was needed as witness), with *Banque de Rive, S.A.* v. *Highland Beach Development Corp.,* 758 F. 2d 559 (CA11 1985) (distinguishing *Flanagan* and accepting appeal pursuant to § 1291); *Interco Systems, Inc.* v. *Omni Corporate Services, Inc.,* 733 F. 2d 253, 255 (CA2 1984) (same); and *Panduit Corp.* v. *All States Plastics Manufacturing Co.,* 744 F. 2d 1564 (CA Fed. 1984) (same). We granted certiorari to resolve the conflict.

III

The decision below allowing immediate appeal of the disqualification order rests primarily on two lines of reasoning. First, the Court of Appeals identifies policy considerations that suggest civil disqualification orders should fall within the

collateral order doctrine even though criminal disqualification orders do not. Second, the court attempts to distinguish *Flanagan*'s application of the *Coopers & Lybrand* test.

A

At least four policy considerations are articulated in the course of the appellate opinion. First, the panel suggests that the societal interest in prompt adjudication of disputes is weaker in civil cases than in criminal cases, and that the "extraordinary limits on the collateral order doctrine" in the criminal context have not been carried over to civil cases. 237 U. S. App. D. C., at 345–346, 737 F. 2d, at 1050–1051. The appellate court further reasons that "disruption and delay of proceedings on the merits are unhappily foreseeable byproducts of the injudicious use of disqualification motions," and that this disruption "would be exacerbated were orders disqualifying counsel not immediately appealable." *Id.*, at 359, 737 F. 2d, at 1064. Third, the panel concludes that immediate appeal should be available not only to vindicate the client's choice of counsel, but also to vindicate "the interest of the attorneys, who are parties to this appeal, in correcting what they claim is an erroneous finding of misconduct." *Id.*, at 348–349, 737 F. 2d, at 1053–1054. The panel notes that "[i]n the event that plaintiffs were satisfied with the final verdict obtained by substitute counsel, the disqualified attorneys could be left with no means whatsoever of vindicating their own important interests on appeal from a final judgment." *Ibid.* Finally, the Court of Appeals expresses concern that the use of motions to disqualify counsel in order to delay civil proceedings and to harass opponents has become prevalent in recent years. "To insulate from prompt review an erroneous order granting a motion to disqualify counsel," the Court of Appeals concluded, "would only raise the stakes in this dangerous game." *Id.*, at 346, 737 F. 2d, at 1051.

We do not find these policy arguments persuasive. Although delay is anathema in criminal cases, it is also unde-

sirable in civil disputes, as the Court of Appeals itself recognized. One purpose of the final judgment rule embodied in § 1291 is to avoid the delay that inherently accompanies time-consuming interlocutory appeals. *Flanagan,* 465 U. S., at 264. When an appellate court accepts jurisdiction of an order disqualifying counsel, the practical effect is to delay proceedings on the merits until the appeal is decided. As in this case, the appellate court may stay all proceedings during appellate review. Even where the appellate court fails to impose a stay, it would take an intrepid District Judge to proceed to trial with alternate counsel while her decision disqualifying an attorney is being examined in the Court of Appeals.

The delay accompanying an appeal results not only when counsel appeals "injudicious use of disqualification motions," but also when counsel appeals an entirely proper disqualification order. Most pretrial orders of district judges are ultimately affirmed by appellate courts. 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3907, p. 433 (1976). Given an attorney's personal and financial interest in the disqualification decision, orders disqualifying counsel may be more likely to lead to an interlocutory appeal than other pretrial rulings, whether those rulings are correct or otherwise. To be sure, an order granting disqualification itself leads to delay. Alternate counsel must often be retained. Even in cases like this one where competent alternate counsel had already entered appearances and participated in the litigation, such counsel will need time to gain the knowledge of the disqualified attorneys. But where the disqualification decision of the trial court is correct, this delay is unavoidable. We do not think that the delay resulting from the occasionally erroneous disqualification outweighs the delay that would result from allowing piecemeal appeal of every order disqualifying counsel.

We also decline to view the disqualified attorney's personal desire for vindication as an independent ground for interlocu-

tory appeal. An attorney who is disqualified for misconduct may well have a personal interest in pursuing an immediate appeal, an interest which need not coincide with the interests of the client. As a matter of professional ethics, however, the decision to appeal should turn entirely on the client's interest. See ABA Model Rules of Professional Conduct 1.7(b), 2.1 (1985). In neither *Firestone* nor *Flanagan* did the Court regard the attorney's personal interest in a disqualification ruling as relevant or dispositive. Moreover, a rule precluding appeal pursuant to § 1291 would not necessarily leave the client or the disqualified attorney without a remedy. As we noted in *Firestone*, "a party may seek to have the question certified for interlocutory appellate review pursuant to 28 U. S. C. § 1292(b), . . . and, in the exceptional circumstances for which it was designed, a writ of mandamus from the court of appeals might be available." 449 U. S., at 378–379, n. 13. Alternatively, if the client obtains an unsatisfactory judgment with substitute counsel, the disqualification ruling may be challenged on appeal of a final judgment. Even when the client is satisfied with the judgment obtained by substitute counsel, an attorney whose reputation has been egregiously injured by the trial court's disqualification decision might be able to obtain relief from the Circuit Judicial Council pursuant to 28 U. S. C. § 332(d)(1).[2]

---

[2] Although it is well established that Judicial Councils do not exist to review claims that a particular trial judge's rulings were erroneous, *In re Charge of Judicial Misconduct*, 613 F. 2d 768 (CA9 1980), they do exist "to provide an administrative remedy for misconduct of a judge for which no judicial remedy is available." *In re Charge of Judicial Misconduct*, 595 F. 2d 517 (CA9 1979). Cf. *In re Complaint of A. H. Robins Co.*, JCP 84–001 (CA8 Judicial Council, Dec. 26, 1984) (noting that Judicial Council conducted hearings, received briefs, and heard oral arguments on complaint that Federal District Judge improperly accused counsel of misconduct, and then dismissed complaint as moot only because a Circuit panel found separate grounds to permit an appeal in *Gardiner* v. *A. H. Robins Co.*, 747 F. 2d 1180 (CA8 1984)).

Finally, we share the Court of Appeals' concern about "tactical use of disqualification motions" to harass opposing counsel. Nevertheless, we do not believe that this "dangerous game" constitutes an independent justification for immediate appeal of an order disqualifying an attorney. Implicit in § 1291 is Congress' judgment that the *district judge* has primary responsibility to police the prejudgment tactics of litigants, and that the district judge can better exercise that responsibility if the appellate courts do not repeatedly intervene to second-guess prejudgment rulings. Cf. *Cohen* v. *Beneficial Loan Corp.*, 337 U. S., at 546 ("Appeal gives the upper court a power of review, not one of intervention"). Like any referee, the district judge will occasionally make mistakes. A mistaken ruling disqualifying counsel imposes financial hardship on both the disqualified lawyer and the client. But the possibility that a ruling may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality requirement imposed by Congress. *Coopers & Lybrand*, 437 U. S., at 476, and n. 28; *Will* v. *United States*, 389 U. S. 90, 98, n. 6 (1967). "If the expense of litigation were a sufficient reason for granting an exception to the final judgment rule, the exception might well swallow the rule." *Lusardi* v. *Xerox Corp.*, 747 F. 2d 174, 178 (CA3 1984). The *Coopers & Lybrand* test looks not to the litigation expense imposed by a possibly erroneous ruling, but rather to whether the right affected by the ruling can and should be protected by appeal prior to judgment. To that inquiry we now turn.

B

In *Flanagan*, the Court held that orders disqualifying counsel in criminal cases cannot satisfy either the second or the third parts of the *Coopers & Lybrand* test: If a showing of prejudice is a prerequisite to reversal, then the ruling is not "completely separate" from the merits because it cannot be assessed until a final judgment has been entered; on the

other hand, if a showing of prejudice is not required, then the ruling can be effectively reviewed on appeal of the final judgment. 465 U. S., at 267–269. Apart from its policy discussion, the Court of Appeals held that *Flanagan*'s analysis is inapplicable in the civil context.

First, the appellate panel asserted that a showing of prejudice would be required in civil cases: "Only an erroneous disqualification combined with prejudice at trial could conceivably result in outright reversal of a civil judgment." 237 U. S. App. D. C., at 347, 737 F. 2d, at 1052. Nevertheless, the panel concluded that the ruling is both incapable of review on appeal of a final judgment and completely separate from the merits. The panel concluded that a disqualification order is unreviewable on appeal of a final judgment because:

> "[I]t would appear virtually impossible to show prejudice resulting from the absence of one counsel and the substitution of another. In a criminal case, a reviewing court could at least draw from the extensive body of law concerning effective assistance of counsel as a first step in determining whether substitute counsel's performance prejudiced the defense so as to require reversal. In the civil context, however, the court would be without a starting point; because there is no sixth amendment right involved, there is no body of law to help a court evaluate whether a civil judgment should be overturned because of the quality of counsel's representation." *Ibid.* (footnote omitted).

The panel finally concluded that the disqualification ruling was completely separate from the merits, even though prejudice is a prerequisite to reversal of a judgment, because (1) it would be difficult to show that prejudice resulted from an erroneous disqualification; (2) the extensive record in this particular case "presents an entirely adequate basis for determining whether the district court's order was proper"; and (3) the "validity" of a disqualification order in a civil case

does not depend on either prejudice or the Sixth Amendment right to counsel. *Id.*, at 347–348, 737 F. 2d, at 1052–1053.

We find these efforts to distinguish *Flanagan* unavailing. To a large extent, the Court of Appeals' analysis rests on a conundrum of its own making. This Court has never held that prejudice is a prerequisite to reversal of a judgment following erroneous disqualification of counsel in either criminal or civil cases. As in *Flanagan*, we need not today decide this question. But we note that the difficulties in proving prejudice identified by the Court of Appeals go more to the issue of the showing required to reverse a final judgment than to whether a disqualification order should be subject to immediate appeal.

The Court of Appeals relies on a requirement of prejudice to overcome the third *Coopers & Lybrand* requirement that the ruling "be effectively unreviewable on appeal from a final judgment." 437 U. S., at 468. Yet by reversing the decision of the District Court on the interlocutory appeal, the Court of Appeals implicitly held that a showing of prejudice is not required on interlocutory appeal. We are unpersuaded by this analysis. As in *Flanagan*, we conclude that, if establishing a violation of one's right to counsel of choice in civil cases requires no showing of prejudice, then "a pretrial order violating the right does not meet the third condition for coverage by the collateral-order exception: it is not 'effectively unreviewable on appeal from a final judgment.'" 465 U. S., at 268. Absent a requirement of prejudice, the propriety of the trial court's disqualification order can be reviewed as effectively on appeal of a final judgment as on an interlocutory appeal.

We must likewise reject the Court of Appeals' suggestion that civil orders disqualifying counsel satisfy the second condition of the collateral order exception. To do so it is enough to rely on *Flanagan*. If the nature of the right to representation by counsel of one's choice is that "[it] is not violated absent some specifically demonstrated prejudice," *ibid.*, then

a disqualification order, though "final," is not independent of the issues to be tried. Only after assessing the effect of the ruling on the final judgment could an appellate court decide whether the client's rights had been prejudiced. If respondent were to proceed to trial and there receive as effective or better assistance from substitute counsel than the disqualified attorney could provide, any subsequent appeal of the disqualification ruling would fail. For the same reasons as in *Flanagan*, the disqualification ruling would be inextricably tied up in the merits.

Even apart from *Flanagan*'s analysis, we would conclude that orders disqualifying counsel in civil cases are not "completely separate from the merits of the action." *Coopers & Lybrand*, 437 U. S., at 468. The Court of Appeals asserts that, in this particular case, the extensive record "presents an entirely adequate basis for determining whether the district court's order was proper." 237 U. S. App. D. C., at 348, 737 F. 2d, at 1053. This Court, however, has expressly rejected efforts to reduce the finality requirement of § 1291 to a case-by-case determination of whether a particular ruling should be subject to appeal. *Coopers & Lybrand*, *supra*, at 473–475. Even if some orders disqualifying counsel are separable from the merits of the litigation, many are not. Orders disqualifying attorneys on the ground that they should testify at trial, for example, are inextricable from the merits because they involve an assessment of the likely course of the trial and the effect of the attorney's testimony on the judgment. *Kahle* v. *Oppenheimer & Co.*, 748 F. 2d, at 339. Appellate review of orders disqualifying counsel for misconduct may be entwined with the merits of the litigation as well. If reversal hinges on whether the alleged misconduct is "likely to infect future proceedings," 237 U. S. App. D. C., at 351, 737 F. 2d, at 1056, courts of appeals will often have to review the nature and content of those proceedings to determine whether the standard is met. In this case, for example, the Court of Appeals opinion exhaustively discusses

respondent's claim on the merits, the relevance of the alleged instances of misconduct to the attorney's zealous pursuit of that claim, the pretrial proceedings in the trial court, and the danger that it will be difficult for the trial judge "to act with complete impartiality in future proceedings." *Id.*, at 359, 737 F. 2d, at 1064. In light of these factors, we conclude that orders disqualifying counsel in civil cases, as a class, are not sufficiently separable from the merits to qualify for interlocutory appeal.

## IV

We acknowledge that an order disqualifying counsel may impose significant hardship on litigants. Particularly where the grounds for disqualification are troubling, this hardship may tempt courts of appeals to assert jurisdiction pursuant to § 1291. But in the words of Judge Adams:

> "[I]t would seem to us to be a disservice to the Court, to litigants in general and to the idea of speedy justice if we were to succumb to enticing suggestions to abandon the deeply-held distaste for piecemeal litigation in every instance of temptation. Moreover, to find appealability in those close cases where the merits of the dispute may attract the deep interest of the court would lead, eventually, to a lack of principled adjudication or perhaps the ultimate devitalization of the finality rule as enacted by Congress." *Bachowski* v. *Usery,* 545 F. 2d 363, 373–374 (CA3 1976).

As in *Firestone,* we decline to "transform the limited exception carved out in *Cohen* into a license for broad disregard of the finality rule imposed by Congress in § 1291." 449 U. S., at 378.

We hold that orders disqualifying counsel in civil cases, like orders disqualifying counsel in criminal cases and orders denying a motion to disqualify in civil cases, are not collateral orders subject to appeal as "final judgments" within the meaning of 28 U. S. C. § 1291. The Court of Appeals lacked

jurisdiction to entertain respondent's appeal and should not have reached the merits. *Firestone*, 449 U. S., at 379. We accordingly do not address the additional issues on which we granted certiorari, and we do not intimate any view on the merits of the District Court's disqualification decision.

The judgment of the Court of Appeals is vacated, and the case is remanded with instructions to dismiss the appeal for want of jurisdiction.

*It is so ordered.*

JUSTICE POWELL took no part in the decision of this case.

JUSTICE BRENNAN, concurring.

A fundamental premise of the adversary system is that individuals have the right to retain the attorney of their choice to represent their interests in judicial proceedings. To be sure, that right is qualified. A court need not, for example, permit an individual to retain anyone at all, regardless of qualifications, to represent him in open court. Nor must a court continue to permit an individual to be represented by an attorney who by his misconduct in open court has threatened the integrity of the proceedings. Nonetheless, if an attorney is adequately qualified and has not otherwise acted so as to justify disqualification, the client need not obtain the permission of the court or of his adversary to retain the attorney of his choice.

I share the view of the Court and the Court of Appeals below that the tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation. When a trial court mistakenly disqualifies a party's counsel as the result of an abusive disqualification motion, the court in essence permits the party's opponent to dictate his choice of counsel. As the court below recognized, this result is in serious tension with the premises of our adversary system, see 237 U. S. App. D. C. 333, 352, 737 F. 2d 1038, 1057 (1984), and some remedy must therefore be avail-

able to correct the error. The question before the Court today is whether that remedy is an automatic interlocutory appeal or whether instead the remedy is simply a stringent review of the disqualification decision on review of the final judgment in the case.

The Court holds that the plaintiff in this case must undergo the burdens of trial without the counsel of her choice before being permitted to obtain appellate review of what may well be an erroneous disqualification. As the Court points out, this result is in accord with our recent decisions in *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U. S. 368 (1981), and *Flanagan* v. *United States*, 465 U. S. 259 (1984). Today's case, however, is somewhat different from both of those cases. Respondent's attempt to vindicate her right to the attorney of her choice is substantially more compelling than the claim in *Firestone* of a "right" not to have one's opponent represented by counsel who has misbehaved. And permitting an interlocutory appeal here would not implicate the strong public interest in speedy disposition of criminal trials that influenced the decision in *Flanagan*. Nonetheless, a litigant's right to retain an attorney of choice can be protected on review of final judgment if appellate courts are willing when necessary to set aside verdicts—even when they result from lengthy civil proceedings. Moreover, today's result could well give pause to a party considering an abusive disqualification motion, for an improper grant of such a motion could jeopardize an ultimate jury verdict in his favor. On the understanding that the courts of appeals will develop standards for reviewing final judgments that will effectively protect each litigant's right to retain the attorney of choice, I join the Court's opinion.

JUSTICE STEVENS, dissenting.

Everyone must agree that the litigant's freedom to choose his own lawyer in a civil case is a fundamental right. The difficult question presented by this case is whether the denial

of that right by a district court's disqualification order can effectively be reviewed following a judgment on the merits.[1]

In my opinion, *Flanagan* v. *United States*, 465 U. S. 259 (1984), does not control the decision in this case. The strong public interest in the prompt disposition of criminal charges—an interest shared by both the prosecutor and the defendant—is not present to the same extent in the civil context where the defendant's interest in delay may motivate a motion to disqualify in a borderline case.[2] Moreover, in a criminal case an erroneous order disqualifying the lawyer chosen by the defendant should result in a virtually automatic reversal; review after trial on the merits is therefore "effective" to protect the right.

In the civil context, I do not believe a pretrial disqualification order would similarly be effectively reviewable after the entry of a final judgment. Prejudice to a litigant's right to go to trial with the advocate of his choice is suffered the moment a disqualification order is granted. Nevertheless, after a trial with substitute counsel has been held, I would be most reluctant to subscribe to a rule requiring reversal without a showing of some impact on the outcome. Yet I believe it would be virtually impossible to demonstrate that an outcome has been affected by the change of counsel as opposed to the other myriad variables present in civil litigation. Both prejudice to the litigant's freedom of choice and the substantive basis of attorney disqualifications based on pretrial actions are "completely separate"[3] from the underlying merits. I am therefore persuaded that a disqualifica-

---

[1] See *Coopers & Lybrand* v. *Livesay*, 437 U. S. 463, 468 (1978) (matters "effectively reviewable" after final judgment not subject to interlocutory appeal).

[2] See 237 U. S. App. D. C. 333, 346, 737 F. 2d 1038, 1051 (1984) (while "tactical use of motions to disqualify counsel" recently have become prevalent in civil cases, "[w]e are aware of no comparable phenomenon in criminal cases").

[3] *Coopers & Lybrand, supra,* at 468.

tion order fits squarely within the classic formulation of an appealable collateral order:

> "This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen* v. *Beneficial Loan Corp.*, 337 U. S. 541, 546 (1949).

This was the unanimous conclusion of the Courts of Appeals that addressed attorney disqualification orders prior to *Flanagan*, and remained the conclusion of four of the five Courts of Appeals that addressed the issue of attorney disqualifications for pretrial misconduct following that decision. I am more confident of the ability of the various Courts of Appeals to evaluate the problem of disqualification motions and supervise the local bench and bar than I am of the accuracy of our own more distant perspective.

On the merits of the disqualification of respondent Koller's counsel here, I agree with the Court of Appeals' explanation of why the District Court's decision was erroneous as a matter of law. See 237 U. S. App. D. C. 333, 349–359, 737 F. 2d 1038, 1054–1064 (1984). Accordingly, I would affirm the judgment of the Court of Appeals.