**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Frank ESPOSITO, Klare Esposito,**
**Claimants–Appellants,**

**8 Princess Court, Certain Real Property and Premises Known as No. 8 Princess Court, Holmdel, New Jersey, etc., Defendants.**

**No. 1479, Docket 91–6322.**

United States Court of Appeals,
Second Circuit.

Argued May 19, 1992.

Decided Aug. 3, 1992.

Arthur P. Hui, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Robert L. Begleiter, Deborah B. Zwany, Sarah J. Lum, Asst. U.S. Attys., on the brief), for plaintiff-appellee.

Michael S. Davis, New York City (Michael Rosen, on the brief), for claimants-appellants.

Before: LUMBARD, VAN GRAAFEILAND and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Claimants Frank and Klare Esposito appeal from interlocutory orders of the United States District Court for the Eastern District of New York, Thomas C. Platt, Jr., *Chief Judge*, permitting the United States, the plaintiff in this civil forfeiture action, to sell their home immediately, prior to the resolution of the forfeiture action. On appeal, claimants contend that the record before the district court did not justify an interlocutory sale, especially at the $675,000 price to be accepted by the government. The government moves to dismiss the appeal for lack of appellate jurisdiction. For the reasons below, we deny the motion to dismiss, and we vacate the orders of the district court and remand for further proceedings.

## I. BACKGROUND

In January 1988, claimant Frank Esposito ("Esposito") was arrested and charged with conspiracy to distribute cocaine, two counts of possession of cocaine with intent to distribute, and various tax offenses. In connection with those charges, the government commenced the present civil action seeking forfeiture of, *inter alia,* the custom-built home of Esposito and his wife, claimant Klare Esposito, located at 8 Princess Court, Holmdel, New Jersey (the "Princess property" or "property"). Alleging that the premises had been purchased with the proceeds of drug transactions and used to facilitate drug transactions, the government obtained an order permitting it to seize the property and ordering the occupants to "quit the premises immediately." Seizure Warrant dated January 5, 1988, at 6.

The Espositos waived their right to a prompt hearing as to the existence of probable cause for the seizure and consented to

a stay of the forfeiture action pending resolution of the criminal charges. In the meantime, the government proposed to allow the Espositos to remain in occupancy so long as they kept up, *inter alia,* the mortgage and property tax payments. The Espositos chose to move out, however, leaving the property vacant. They also ceased to make mortgage and tax payments.

In October 1989, Esposito was convicted on the conspiracy charge and on several tax counts, and was acquitted on the two counts of distribution of narcotics. Notwithstanding the 1989 resolution of these charges, the government did little to prosecute the present action until 1991. In the meantime, Central Jersey Bank & Trust Co. (the "Bank"), which held a first mortgage on the property, had filed a claim in the civil forfeiture proceeding and sought to pursue a state-court action to foreclose on the property for nonpayment of the mortgage.

In February 1991, in light of the bank's pending foreclosure action, the Espositos' attorney Michael Rosen wrote the government stating his recollection that the property had been appraised at about $1,500,-000 and suggesting, "without prejudice and without waiver of any of the Esposito's [*sic*] rights or claims," the possibility of an interlocutory sale of the property at "a price reasonably related to the government's appraisal and the present fair market value." (Rosen Letter to Assistant United States Attorney ("AUSA") Arthur P. Hui dated February 7, 1991 ("February 1991 letter").) Rosen apparently pursued the matter for the next few months with follow-up letters and telephone calls, without receiving any response. In May 1991, AUSA Hui attempted to negotiate an agreement among the government, the Espositos, and the Bank for a private sale of the property. Apparently, after the initial negotiations, the Espositos did not respond. On August 28, 1991, the Bank wrote the government stating that the Bank had been deprived of its right to foreclose on the property "for more than three years as a result of the dilatory actions of the United States Attorney's Office in proceeding with

the forfeiture action," and threatening to intervene if steps were not taken promptly to procure the release of the property or to repay the Bank in full.

On September 6, 1991, the government moved for an order authorizing it to sell the Princess property on an interlocutory basis. The Bank cross-moved for an order permitting it to conduct a foreclosure sale or, alternatively, for an order requiring the government immediately to pay the Bank the outstanding amounts due on the mortgage, plus expenses. The Espositos cross-moved for an order compelling the government to retain and properly maintain their home.

In support of its motion for an order permitting the interlocutory sale of the Princess property, the government submitted initial and reply declarations by AUSA Hui and by Deputy United States Marshal Dominic Russo, who was in charge of the government's real property forfeiture sales in New Jersey. Hui's declarations, referring to the Rosen February 1991 letter and follow-up letters and the May discussions, argued principally that the Espositos had consented to an interlocutory sale of the property. Russo stated that the government had expended some $22,000 for repairs and maintenance of the property since the seizure in 1988, and that because of the "soft state of the real estate market in New Jersey," an immediate sale would be in the best interests of all parties. (Russo declaration dated September 6, 1991, ¶ 7.) Russo, a licensed real estate agent, stated that the Princess property had been appraised at $999,070 in February 1988 and at $910,000 in May 1991 and that in his experience, the longer a property remains unoccupied, the lower its market value. He stated that in the past year he had had "numerous and frequent inquiries from private citizens and their real estate brokers interested in purchasing" the Princess property, and he believed the government could sell it within 30 days of an order permitting such a sale. (Russo reply declaration dated October 16, 1991, ¶ 8.) He concluded that, "based upon my experiences and knowledge, I believe that a pri-

vate sale of the subject property would result in gross proceeds closely equalling or perhaps exceeding the most recent appraised value of $910,000.00." (*Id.* ¶ 9.)

In opposition to the proposed sale and in support of the Espositos' motion to require the government to retain and maintain the property, Klare Esposito submitted an affidavit stating, *inter alia*, that her home had been custom-built by Esposito, who did much of the construction himself, that there had been no allegation that she herself had been involved in any narcotics offenses, and that she would suffer if the government were allowed to sell her home. The Espositos also argued that the government was unlikely to succeed on the forfeiture claim because Esposito had been acquitted on the substantive narcotics counts, and that the government had not shown any facts that would justify a sale prior to adjudication of whether or not the government was entitled to forfeiture.

At a brief hearing on the motions, the government stated that it expected to be able to sell the property within 30 days for more than $800,000 and perhaps more than $900,000. The Bank argued that the court should either require the government to pay the Bank what was owed or let the Bank proceed to foreclose on the property. The Espositos argued principally that the government was unlikely to succeed on its forfeiture claim and that the Espositos wished to keep their home and to live in it at the anticipated conclusion of the litigation in their favor.

The district court granted the government's motion, stating simply as follows: "The Court is going to grant the motion of the government for an order with respect to the interlocutory sale of the property located on Prince [*sic*] Court." (Hearing Transcript, October 25, 1991, at 7.) The court ordered that the proceeds of the sale be held in escrow pending resolution of the civil forfeiture issues, and it ordered the government to pay the Bank the principal and interest due on the mortgage whether or not the property was sold within 30 days.

The property was not sold within 30 days; as ordered, however, the government paid the Bank some $210,000 in satisfaction of the mortgage. Shortly thereafter, the government proposed to sell the property for $675,000, and the district court issued an order authorizing the interlocutory sale at that price. The Espositos appealed to this Court, which entered a stay of the sale pending resolution of the appeal.

## II. DISCUSSION

### A. *Appellate Jurisdiction*

■ The Espositos contend that the orders of the district court permitting the government to conduct an interlocutory sale of their home are appealable under the collateral order doctrine, a narrow exception to the final order rule, which allows an appellate court to review immediately a district court order affecting rights that will be irretrievably lost in the absence of an immediate appeal. *See, e.g., Richardson–Merrell Inc. v. Koller*, 472 U.S. 424, 430–31, 105 S.Ct. 2757, 2760–61, 86 L.Ed.2d 340 (1985); *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). To fall within the exception, an order must at a minimum (1) " 'conclusively determine the disputed question,' " (2) " 'resolve an important issue completely separate from the merits of the action,' " and (3) " 'be effectively unreviewable on appeal from a final judgment.' " *Richardson–Merrell Inc. v. Koller*, 472 U.S. at 431, 105 S.Ct. at 2761 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978)). The government concedes that the third of these conditions is met but disputes the other two. We believe all three conditions are met.

The government seized the Princess property pursuant to 21 U.S.C. § 881 (1988), which, in pertinent part, subjects to forfeiture "all proceeds traceable" to an exchange for a controlled substance, *id.* § 881(a)(6), and "[a]ll real property ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" a narcotics felony, *id.* § 881(a)(7). Each of these subsections

excludes from forfeiture the property of an innocent owner, as follows:

> no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6); *see id.* § 881(a)(7). The government has alleged that the Princess property was constructed in 1985 with the proceeds of narcotics transactions and was later used to store narcotics for distribution. The forfeiture complaint also alleged that these events occurred with the knowledge of Klare Esposito; she asserts that she was innocent of any wrongdoing. Thus, the issues in this forfeiture action are whether or not the property was acquired with the proceeds of narcotics transactions, whether or not it was used to facilitate narcotics transactions, and whether or not Klare Esposito had knowledge of or consented to these acts.

None of these issues has been determined by the orders permitting interlocutory sale of the Princess property. The government's right to forfeiture has not been established; the government must hold the proceeds of the sale in escrow pending determination of that right. Nor has there been any determination of the component issues of whether the property was obtained with drug money or whether it was used to store narcotics; those issues remain to be adjudicated. And if those questions eventually be answered affirmatively, it will still remain to be determined whether or not Klare Esposito had knowledge or gave her consent. All that has been determined by the orders permitting interlocutory sale is that, whatever the determination of the substantive issues, and whatever the outcome of the forfeiture action, the Espositos must lose their home. Given the unique nature of real property and the unique relationship between a person and his or her home, we regard an order permitting interlocutory sale of the home without regard to the merits of the action as an order that conclusively determines an important issue, one that is separate from the merits of the action, and one

that would be effectively unreviewable on appeal from a final judgment. Accordingly, we have jurisdiction to entertain the present appeal.

B. *The Merits of the Orders Permitting the Interlocutory Sale*

■ Forfeitures with respect to controlled substances are governed by 21 U.S.C. § 881, which provides for the initiation of a civil forfeiture action by process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rules"). 21 U.S.C. § 881(b). We infer that, though § 881 does not explicitly so state, the Supplemental Rules are also to be applied to the ensuing proceedings in the civil forfeiture action. *See generally United States v. $38,000.00 in United States Currency*, 816 F.2d 1538, 1545 n. 13 (11th Cir.1987). Those Rules allow the court, on motion of the government or any other party to the action, to order an interlocutory sale of seized property

> [i]f [that] property ... is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expense of keeping the property is excessive or disproportionate, or if there is unreasonable delay in securing the release of property.

Supplemental Rule E(9)(b).

In granting the government's motion under this Rule, however, the district court did not make any findings of fact and did not mention any of the factors listed in Rule E(9)(b). Nor is it clear whether those factors in the present case could justify an order for the interlocutory sale of a home. For example, though a building is of course subject to depreciation, real property is not. Further, there was no finding that the Espositos' home was "liable to deterioration, decay, or injury by being detained in custody pending the action." Even as to the market value of the home, differing views were presented to the district court, both by means of written statement, and neither particularly probative. The marshal merely stated conclusorily that the real estate

market in New Jersey was "soft"; Klare Esposito relied on hearsay statements attributed to "several local realtors in the Monmouth County area ... indicat[ing] that real estate prices have remained stable recently." (Klare Esposito affidavit dated October 1991 [*sic*], ¶ 7.) Neither proffer seems a sufficient basis for a finding as to whether or not an immediate interlocutory sale was needed. And certainly we have been cited to no evidence in the record suggesting that the government should be permitted to make the interlocutory sale for a price of $675,000, given the government's representations (a) that the most recent appraisal of the property, just four months prior to its motion, was $910,000, (b) that in the more than three years between the seizure and the most recent appraisal the value of the property had declined by less than 10%, and (c) that in the past year there had been numerous and frequent inquiries from brokers and persons interested in purchasing the property.

Further, though the government stated that it had expended about $22,000 for maintenance and repairs in the nearly four years since seizure—an average of $6,000 a year—there was no finding that this amount was excessive or disproportionate. Nor would such a finding seem reasonable given the most recent assessment of the property's value at $910,000.

Finally, though there plainly had been unreasonable delay in proceeding with the adjudication of the forfeiture action, it appears that the delay was principally the fault of the government. Following Esposito's conviction, the government apparently did nothing for about a year to pursue the forfeiture action; then it served interrogatories that the Espositos said they were unable to answer because the government had seized their documents; the government took no steps to compel answers or any other steps to advance the action.

Nor could the court simply accept the government's contention that the Espositos had consented to the interlocutory sale. Rosen's February 1991 letter proposed such a sale, but not unconditionally. It expressly presumed a sale at a price reasonably related to the assessed value which Rosen thought he recalled was near $1,500,000. And it stated that the proposal was "without prejudice and without waiver of any of the Esposito's [*sic*] rights or claims." This record cannot support the proposition that the Espositos had consented to the interim sale of their home for $675,000.

## CONCLUSION

For the above reasons, we vacate the orders of the district court authorizing the government to sell the Espositos' home prior to adjudication of the government's right of forfeiture, and we remand for further proceedings not inconsistent with the foregoing.

VAN GRAAFEILAND, Circuit Judge, concurring:

I agree with my colleagues that the district court's order should be vacated. I do not agree with their gratuitous comments concerning unreasonable delay. This issue was not raised in either the district court or this court. Moreover, it involves factors other than the passage of time, factors concerning which this court is ignorant. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *United States v. Carini*, 562 F.2d 144, 148 (2d Cir.1977). Should the defendants decide to raise this issue upon remand, the district court can resolve it with appropriate reference to the pertinent factors. *See United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1163 (2d Cir.1986).