OPINION
PER CURIAM.
Background
This matter involves litigation occasioned by frustration of the expectations of Plaintiffs, Jim Veit and Fred Kost, that their grazing authorization for Tribal Range Unit Number 162, which is assigned to Appellants Paul and Clara High Elk and Codi American Horse (the High Elk Defendants), would be renewed for the 2005 grazing year. Expecting such renewal, the Plaintiffs allegedly prepaid the initial payments for the anticipated rental for the 2005 grazing year so that proper payments could be made to the Bureau of Indian Affairs in a timely fashion. They did so without any written sublease or other pasturing agreement for the range unit in question for the 2005 grazing year based on their personal anticipation of renewal for the 2005 grazing year due to the alleged long standing relationship between the parties. Unfortunately for the Plaintiffs, the High Elk Defendants did not renew their previous authorization with the Plaintiffs for the 2005 grazing year. Instead, they entered into a pasturing authorization agreement with Duane and Sharon Keller (the Kellers), which was approved by the Bureau of Indian Affairs, and which resulted in the Kellers placing cattle on Range Unit Number 162 commencing some time in May, 2005.
This litigation and its tortuous procedural history basically involves the Plaintiffs’ efforts to recoup the sums they voluntarily paid for grazing rights in 2005 based on their own expectation of renewal, but without the benefit of any written, signed pasturing authorization, The present appeal purports to be an interlocutory appeal, although for reasons stated below actually involves an appeal of a final collateral order entered at a time when the original *75 Defendants, Paul and Clara High Elk and Codi American Horse, were no longer parties to any proceeding, that purported to attach or garnish rent payments due to the High Elk Defendants from The Kellers and directed such payments to be held in escrow, pending the outcome of the litigation. Both the High Elk Defendants and the Plaintiffs were represented by counsel in this appeal. This Court received briefs from these parties and heard oral argument on January I. 2006. By separate Order of this Court dated January 5, 2006, this Court vacated the earlier attachment/escrow order and directed the accumulated escrow be paid to the Plaintiff, indicating that an Opinion explaining its action would be forthcoming. This Opinion explains and supports that Order.
A. Factual Background
For several years Plaintiffs, Jim Veit and Fred Kost, had subleased pasture from Defendants Paul and Clara High Elk and Codi American Horse, who were assigned Range Unit Number 162. The Court is advised that Range Unit Number 62 is composed of land held in trust by several owners, including Plaintiffs Paul and Clara High Elk, and the Cheyenne River Sioux Tribe (Tribe).[1] Despite the fact that some disagreements allegedly occurred over the years, by even the Defendants’ account of the facts, “all parties anticipated that Plaintiffs would again lease pasture for the 2004-2005 grazing year.” Dr. In Support of Appellant, p. 1. Anticipating renewal of their pasturing authorization but before securing any written agreement with the High Elk Defendants, Plaintiffs allegedly prepaid portions of the 2005 grazing authorization fees. The High Elk Defendants later entered into a pasturing permit with Duane and Sharon Keller, for the 2005 grazing year, leading to the placement of cattle by Kellers on the Unit in May of 2005. Once they recognized that their grazing authorization would not be renewed for the 2005 grazing year, the Plaintiffs sought some method of recouping their advance grazing permit payments. Thereafter, the tortuous procedural history leading to this appeal ensued.
B. Procedural Background
‘In order to recover their advance permit fees, Plaintiffs/Appellees filed a related action, R-076-05, against both Defendants Paul and Clara High Elk and Codi American Horse, and Duane and Sharon Keller seeking to prevent the removal of the Keller cattle from Range Unit Number 162 on the Cheyenne River Sioux Reservation, apparently deeming the Keller cattle some sort of security for repayment of their advance rental payments. After a series of ex parte Temporary Restraining Orders and hearing's were held, the matter was set for Hearing on July 28, 2005 and then rescheduled for further Hearing on August 23, 2005. At the August 23, 2005 hearing, the Kellers appeared only through counsel *76 and The Tribal Court dismissed Paul and Clara High Elk and Codi American Horse as parties to the then pending case—No. R.076-05. Counsel for Defendants Paul and Clara High Elk and (Jodi American Horse requested to be advised of further proceedings in the matter so they could attend as an interested observer. Despite the fact that the High Elk Defendants had already been dismissed from the action, the Tribal Court ordered Defendants/Garnishees Duane and Sharon Keller to pay any pasture rent otherwise due to Paul and Clara High Elk and Codi American Horse into an escrow account instead of paying such sums directly to the High Elk Defendants. No such relief had been requested in the initial Complaint filed in the case and Paul and Clara High Elk and Codi American Horse were never served with any pleading, motion, or other notice providing advance notiee of such a request. At the time the attachment/garnishment order was entered Paul and Clara High Elk and Codi American Horse had been dismissed from and were no longer parties to the case. This appeal contests the validity of this attachment order and its reaf-firmance on September 15, 2005.
On September 15, 2005, another hearing was held in this matter. At that time, and for the first time, the attorney for Appellants Paul and Clara High Elk and Codi American Horse were handed a new Complaint requesting some type of attachment or garnishment.[2] At this hearing, the trial court orally dismissed the Kellers from action (leaving, of course, no remaining party defendants who had actually been served) but named them as Garnishees and reiterated its earlier order for them to make payments otherwise due to the High Elk parties into a trust escrow account pending the outcome of the new action. The Kellers apparently thereafter made some payments that should have been paid to the High Elks into the trust escrow account. The High Elks later filed an Answer and Counterclaim to the new action and simultaneously filed a Notice of Appeal from the attachment/garnishment order, styling it as an interlocutory appeal. This appeal ensued.
Discussion
A. Jurisdiction
While not raised by any of the parries, the jurisdiction of this Court over this appeal poses some difficulties. Under Rule 84(b) of the Cheyenne River Sioux Tribe Rules of Civil Procedure, appeal is limited to “any final order, commitment, or judgment of the trial court.” The Appellants have styled this appeal as an interlocutory appeal and, were it such, this Court would have no jurisdiction over the appeal since interlocutory appeals generally do not constitute appeals from final orders which is required by Rule 84(b) as a prerequisite for the this Court to exercise jurisdiction. In First Financial Bank USA v. Garrett, No. 02-003-A, 4 Am. Tribal Law 84 (Chy.Riv.Sx.Ct.App.2003), however, this Court adopted the so-called collateral order rule as part of its definition of final orders. In that case, in reference to a sale order as part of a foreclosure proceeding, this Court said:
The federal courts, which also have a final judgment rule embodied in 28 U.S.C. § 1291, nevertheless treat as final any collateral order that would otherwise be nonappealable if immediate appeal were not permitted. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 *77 (1949). The federal courts therefore hold that any collateral order is final within the meaning of section 1291 and therefore immediately appealable. Generally, in order to fall within the federal collateral order rule permitting immediate appeal, a collateral order “must conclusively determine the disputed question/ ‘resolve an important question completely separate from the merits of the action,’ and be effectively unreviewable on appeal from a final judgment.” Richardson-Merrell, Inc. v. Roller, 472 U.S. 424, 431, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) see also, Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989). While not directly applicable in the courts of the Cheyenne River Sioux Tribe, this Court holds that the federal notion of finality reflected in the collateral order rule effectively serves the interests of justice reflected in Rule 84(b) of the Cheyenne River Sioux Rules of Civil Procedure which are designed to afford “[a]ny party who is aggrieved” a right of appeal from a final order. The problem, of course, with collateral orders is that unless such orders are treated as final, they can otherwise never be appealed after the last order entered in a case.
In this matter, this Court holds that an order of sale in a foreclosure action, such as the pending matter, constitutes an appealable collateral order, although we dismiss on other grounds. The older for sale of the secured collateral conclusively determines the right of the owner to continue possession of the , secured property and therefore satisfies the first test of a collateral order. An order for the sale of secured collateral is also collateral and separable from the ultimate effort to collect the judgment, although it may implicate the ultimate outcome of that effort. Thus, it satisfies the second test for a collateral order. Finally, since the sale of the collateral cannot be simply undone through a successful appeal, the order is “effectively unreviewable on appeal from a final judgment.” This Court therefore holds that any order for sale of secured collateral for a loan constitutes an appealable final order of the Tribal Court within the meaning of the collateral order rule which it today embraces as a reasonable interpretation of Rule 84(b).
For many of the same reasons, this Court finds that this ancillary attachment/garnishment order, never requested in the initial: Complaint, constitutes a collateral final order and therefore constitutes an appealable final order. To rule otherwise would render the attachment/escrow order entered in this case effectively unreviewable since it lasts only as long until entry of final judgment in the case.
B. Due Process
Appellants raise a series of objections to the attachment/garnishment order including lack of effective notice, lack of any bond or other security, lack of hearing as to hardship, and deprivation of due process of law in violation of the federal Indian Civil Rights Act of 1968, 25 U.S.C § 1302(8). While some are phrased as procedural irregularities, most of these claims (other than the lack of property bond or other security)[3] implicate the due *78 process requirements of notice and hearing, In Cheyenne River Sioux Tribe Housing Authority v. Howard, No. 04-008A (Ch. Riv. Sioux Ct.App,, Sept. 23, 2005) this Court recently reaffirmed the traditional Lakota values embodied in the term due process of law. Just as Lakota tradition requires the respectful listening to the position of all interested persons on any important issue, the legal requirement of due process of law .requires that all persons interested in a matter receive adequate written notice of any proceeding that would implicate their personal interests, including their property or, as here, rent payments contractually owed to them, that they be made parties to any ease or judgment that would affect those interests, and that they have a full and fair opportunity to participate as a party in any hearing on such issues. These requirements are further supplemented by the indispensable party provisions of Rule 19 of the Cheyenne River Sioux Tribal Rules of Civil Procedure. In the Howard case, this Court recently summarized the requirements of due process in a civil context as follows:
This Court has long recognized that basic Lakota concepts of fairness and respect as well as the federal Indian Civil Rights Act, 25 C.K.C § 1302(8), clearly guarantees all parties who appear before the courts of the Cheyenne River Sioux Tribe due process of law. E.g. Dupree v. Cheyenne River Housing Authority, 16 Ind. L. Rep. 6106 (Chy. R. Sx.Ct.App.1988). Basic to any concept of due process of law in a civil proceeding, such as this eviction case, is receipt of timely notice and the opportunity to be heard and present evidence at a hearing in support of one’s case. Mullane v. Central Hanover Bank, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The basic requirements of notice and hearing, which lie at the core of civil due process of law, do not constitute mere formal requirements or hoops that must be surmounted before judgment. Rather, due process involves functional procedural prerequisites designed to assure that every party has a realistic opportunity to be heard in any case affecting their legal rights. Here, Mr. Howard was lighting to remain in the only home he lawfully occupied, a precious and important right, indeed, particularly for a person in Mr. Howard’s fragile medical condition, even if he did own the home in question.
Every court of the Cheyenne River Sioux Tribe is bound both by customary Lakota concepts of respect and by the requirements of due process of law protected by the federal Indian Civil Rights Act, 25 U.S.C. § 1302(8), to assure that the parties before them are all afforded due process of law.... Where the trial court finds any of these elements lacking or, as here, fails by its own omission to establish their presence, it proceeds at its peril since the judgment it enters may turn out to be defective, as here, for want of basic procedural fairness that denies due process of law. Furthermore, where an appeal is brought to this Court demonstrates the denial of the fundamental procedural elements of fairness, it is the duty of this Court to reverse the judgment or order before for want of due process of law, irrespective of whether that argument was di *79 reetly raised by the party. Such serious procedural errors constitute plain error that much be noted by and acted upon by the Court.
Unfortunately, precisely the same language could be applied to the procedure in this case that led to the garnishment/attachment order at issue here. First, until receipt of the Complaint in the new action, first served on counsel at the September 15, 2005 hearing, Paul and Clara High Elk and Codi American Horse had never received any written notice of any demand for attachment or garnishment of rent payments unquestionably due to them from the Kellers pursuant to their pasturing agreement Clearly, receipt of such written notice after the August 23., 2005 bearing had already ordered garnishment and on the same day and at the staid of the September 15, 2005 hearing where the attaehment/garnishment order was reiterated does not constitute adequate or effective notice permitting a party to appear and defend. Indeed, when counsel appeared at the September 15, 2005 hearing Paul and Clara High Elk and Codi American Horse were not parties to any pending action and were not thereafter served with summons and complaint in any effective manner that would provide adequate notice for attachment of their property on the same day. Second, counsel for the High Elks appeared at the September 15, 2005 as an interested observer, not representing any remaining party to the proceeding. No reasonable attorney would think counsel in such a situation would be adequately prepared for and might reasonably expect to defend his clients’ interests in action to attach rent payments due his clients. Third, the hearing took place the same day counsel for the High Elk Defendants first received notice of the demand. Clearly, in the absence of some life or death emergency, not obvious on the face of this record, such short notice does not constitute adequate notice to comply with due process of law under the principles set forth above. Fourth, at the time the second garnishment/attachment order was issued the High Elk Defendants had not even been served with a summons and Complaint in this new action and it is, at best dubious, that the action was effectively pending on September 15, 2005 both for lack of effective service of process and for lack of filing of the Complaint with the trial court, which under the applicable rules commences the action. Thus, precisely why the trial court thought it had before it any pending action involving the High Elk Defendants remains a mystery to this Court based on the record before it.
The only major response to these problems offered by Appellees, James Veit and Fred Kost, is that the High Elks through their attorney, Curtis L. Carrroll, waived all due process and other objections since he allegedly agreed to the attachment/garnishment order at the September 15, 2005 hearing. Curtis L. Carroll, attorney for the High Elk Defendant, flatly denies making any such agreement. No transcripts were made of the proceedings although a tape recording of the hearing exists, as it does for most proceedings in the trial court. When asked during argument if she had reviewed the tape recording before making the representations to this Court on this critical fact, the attorney for the Appellees, Cheryl F. Laurenz-Bo-gue, admitted that she had not. Instead she claims she relied on her notes on the issue. Unlike the attorney for the Appel-lees, this Court has reviewed the tape recording of the hearing, which was also available to counsel upon request from the Clerk’s office. This Court can find omit no such agreement to the garnishment/attachment order by the attorney for the Hish Elk Defendants Curtis L. Carroll. While the Kellers’ attorney clearly agreed to the *80 payment, their rights were adequately secured. It was the High Elk Defendants who were deprived of grazing rental fees due to them and whose rights were adversely affected by the attachment/garnishment order at issue here. Agreement from the Kellers’ attorney certainly is not the same and does not have the same effect as agreement from the attorney for the High Elk Defendants, the parties to whom the rental payments were due. In short, whether out of confusion in her notes or otherwise, Ms. Laurenz-Bogue has simply misrepresented the facts of the hearing to this Court. Obviously, on the actual record of this case, her waiver argument cannot be sustained.
This Court specifically reminds Ms. Lau-renz-Bogue and advises all other counsel that misrepresentations of factual events or the record to the Court, particularly where deliberate, reckless, or negligent constitutes unprofessional conduct, which can lead to appropriate disciplinary action. Ms. Laurenz-Bogue is specifically advised and all counsel are cautioned that before making representations to this Court in any brief or oral argument about events at any hearing conducted on the record in the trial court, they should carefully review and listen to the tapes of the appropriate hearing.[4] Failure to do so will be considered evidence of recklessness should any misrepresentation occur.
For the reasons stated in this Opinion entry of the attachment/garnishment order at issue here constituted a departure from Lakota traditions of respect and honor, was contrary to law, and violated the guarantees of due process of law found in the federal Indian Civil Rights Act of 1968. 25 U.S.C. § 1302(8). For these reasons the order must be and has already been vacated by this Court’s Order of January 5, 2006.
Ho hecetu yelo.
It is so ordered.

. By vacating the collateral attachment/garnishment order, this Court does not mean to suggest that either the Tribal Court or this Court properly has jurisdiction over the underlying case. The basic problem is that to the extent that the Tribe holds any benelicial title to any of the lands in Range Unit Number 162 and it has not and cannot be made a party, there may be a failure to join an indispensable party to this action if any portion of the relief requested by the Plaintiffs affects the rights of possession in lands to which the Tribe has a present interest. Clement v. Le Compte, No. 93-009-A (Chy.Rv.Sx. Tr. Ct. App.1994). Since neither the full extent of Tribe's rights in Range Unit Number 162 nor the full extent of the relief sought by the Plaintiffs are clear on the present record, this Court offers no view on the jurisdiction of the Tribal Court over the underlying litigation but strongly urges the Tribal Court to carefully review those issues in the first instance before taking in further steps in this litigation.

. For unexplained reasons, the Complaint was never filed until November 19, 2005, long after the orders at issue here were entered.

. While this Court does not base its decision on and does not need to fully address the bond or security issue, the Court notes that this situation can be distinguished from the usual injunctive court order in which security or a bond is required in that the escrow account itself constitutes security for each side should it prevail in the final decision of *78 the trial court. Thus, unlike the issuance ol an injunctive that may cause harm to the party enjoined which is not covered by anv security other than a court ordered bond, the escrow account here covers the direct, although perhaps not any consequential, loses each party may sustain. Thus, without finally deciding the matter, the bond and security objections raised by the Appellant may not be well founded.

. This Court also notes that the funding for and staff of the Office of Court Clerk is now totally inadequate to prepare written transcripts from the tapes of trial court hearings. For that reason, this Court, now treats the tape recordings as the official record of the hearings. When equipment is available and in working order, the Office of the Clerk will, upon written request accompanied by the appropriate fee, make copies of those tapes for the parties. If no means are available for making such copies, counsel must review the originals of the tapes on the Court's transcription equipment by appointment with the Office of the Clerk. The obligation to effectively review the record costs with the parties and their counsel and is not the responsibility of the Office of the Clerk.