United States Court of Appeals,

Eleventh Circuit.

No. 95-4847.

William J. DEVINE, Terry Devine, John Devine, a minor by and through his natural parents William J. Devine and Terry Devine, Plaintiffs-Counter-Defendants-Appellants,

v.

INDIAN RIVER COUNTY SCHOOL BOARD, Defendant-Counter-Claimant-Appellee.

Sept. 5, 1997.

Appeal from the United States District Court for the Southern District of Florida.

Before BARKETT, Circuit Judge, KRAVITCH, Senior Circuit Judge, and HARRIS[*], Senior District Judge.

KRAVITCH, Senior Circuit Judge:

William Devine ("Devine"), a non-lawyer, seeks to discharge his family's attorney and represent the interests of his child, John, in a lawsuit pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA").[1] The district court denied Devine's "Emergency Motion to Allow Withdrawal of Attorneys and Pro Se Appearance," filed on the second day of trial. We affirm.

I.

During the 1992-93 school year, the Devine family, including their autistic son John, resided within the Indian River County school district. Agreeing that John is a disabled child within the meaning of IDEA, entitled to a free, appropriate public education, the parties sought to craft an individualized education program ("IEP") for the school year. A dispute arose as a result of Devine's belief that John required more than the daytime schooling he received at Dodgertown Elementary School. Devine urged the school board to furnish a residential placement for John, preferably at the

[*]Honorable Stanley S. Harris, Senior U.S. District Judge for the District of Columbia, sitting by designation.

[1]On June 4, 1997, President Clinton signed the Individuals with Disabilities Education Act Amendments of 1997. Its provisions do not affect the disposition of this case.

May Institute in Massachusetts.[2]  The Indian River County school board denied such placement and the Devines requested a due process hearing, *see* 20 U.S.C. § 1415(b)(2), to challenge the board's IEP on several grounds.  At the hearing, Devine represented his family by examining witnesses and presenting evidence.  The hearing officer concluded that the IEP was insufficient, as it ignored John's developmental difficulties after school hours, but also ruled that a residential placement was unnecessary.

Thereafter, the Devines commenced the instant action in the district court, seeking:  (1) attorney's fees and costs as prevailing parties in the administrative proceeding;[3]  (2) compensatory damages for expenses incurred as a result of the allegedly deficient IEP;  (3) extended eligibility under IDEA;  (4) general damages;  and (5) prospective relief ordering residential placement at the May Institute.[4]  From their initial complaint in October, 1993 until the second day of trial, February 21, 1995, the Devines were represented by counsel.  For most of the proceedings, Robert Blackmore of Oregon served as the Devines' attorney, having been admitted *pro hac vice* and having associated with local counsel in accordance with the district court's order.

At the beginning of the day on February 21, Blackmore informed the court that Devine wished to discharge him as the family's attorney and to proceed with the trial unaided.  Devine discussed the matter with the court, which then denied the motion.  Trial proceeded until February 24, on which date the court recessed the trial to recommence July 27.  Until this point, Devine apparently remained satisfied with Blackmore's performance.[5]  On June 7, however, Devine moved

---

[2]John previously had been placed at the May Institute.  The Devines lived in Massachusetts until moving to Florida in the fall of 1988.

[3]*See* 20 U.S.C. § 1415(e)(4)(B).  The record indicates that the Devines retained Robert Blackmore as their attorney for purposes of evaluating the hearing officer's proposed final order.

[4]The Devines moved to Massachusetts following the 1992-93 school year, and Massachusetts state and local school entities presently are paying for John's placement at the May Institute. Devine represented at oral argument that he wishes to return to Florida, and have local instrumentalities in Florida assume the cost of paying for John's placement.

[5]In his brief, Devine states that "Blackmore did not adequately represent the interests of the Devines," citing Blackmore's failure to appear at a pretrial hearing and deficient performance at other unidentified hearings.  Devine's February 21 colloquy with the district court, however, belies this claim and suggests that financial considerations motivated the request to proceed *pro*

the district court to allow Blackmore to withdraw and to allow Devine to proceed *pro se,* citing undisclosed differences.  The court denied the motion and Devine filed a timely notice of appeal.

## II.

As a threshold matter, we consider whether we have jurisdiction over a non-final order allegedly infringing a party's right to appear *pro se.*[6]  The challenged order does not finally resolve the merits of the case, authorizing our review under 28 U.S.C. § 1291, nor is it one of the kinds of interlocutory orders from which an appeal may be taken pursuant to 28 U.S.C. § 1292(a).  Further, the district court did not certify the order as presenting "a controlling question of law as to which there is a substantial ground for a difference of opinion," permitting appellate review under 28 U.S.C. § 1292(b).[7]

Interlocutory jurisdiction only exists, then, if the challenged order fits within the narrow collateral order exception to section 1291's finality requirement.  *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).[8]  To satisfy *Cohen,* a non-final order must "conclusively determine the disputed question, resolve an important issue completely separate

---

*se.*

[6]As is evident from section III, *infra,* we do not believe that Devine may proceed *pro se* on his son's behalf.  The nature of the jurisdictional inquiry, however, requires us to assume for present purposes that he can.  We note that Devine does not challenge the district court's order as it applies to his representation of his wife and himself.  Thus, we think the order is best characterized—in order to assess jurisdiction—as one denying a motion to proceed *pro se* on John's behalf.

[7]Although a motions panel of this court denied the school board's motion to dismiss the appeal for lack of jurisdiction, we may revisit that determination.  *See* 11th Cir. R. 27-1(f).

[8]Our court has recognized that three exceptions to the finality requirement exist:  (1) the collateral order doctrine;  (2) the doctrine of practical finality;  and (3) the exception for intermediate resolution of issues fundamental to the merits of the case.  *In re:  F.D.R. Hickory House, Inc.,* 60 F.3d 724, 725 (11th Cir.1995).  Upon consideration, we are persuaded that only the first of these is arguably relevant to the instant appeal.  The doctrine of practical finality, or the Forgay-Conrad rule, applies in cases involving property contests, *id.* at 726, and the final exception (first articulated in *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964)), has been given a narrow construction.  *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 477 n. 30, 98 S.Ct. 2454, 2462 n. 30, 57 L.Ed.2d 351 (1978) (describing *Gillespie* as permitting jurisdiction over "unsettled issue of national significance" when jurisdictional problem only identified late in the litigation;  holds that "[i]f *Gillespie* were extended beyond the unique facts of that case, § 1291 would be stripped of all significance.").

from the merits of the action, and be effectively unreviewable on appeal from a final judgment."

*Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). We conclude that we have jurisdiction over non-final orders denying *pro se* status.

The majority of courts to address this question have found that jurisdiction is proper. *Compare Reshard v. Britt,* 819 F.2d 1573 (11th Cir.) (holds order denying personal representatives of estate from representing estate *pro se* immediately appealable), *vacated,* 831 F.2d 222 (11th Cir.1987), *affirming district court by equally divided court,* 839 F.2d 1499 (11th Cir.1988) (en banc);[9] *C.E. Pope Equity Trust v. United States,* 818 F.2d 696 (9th Cir.1987) (without discussion, holds order striking trustee's *pro se* pleadings on behalf of trust immediately appealable) *and O'Reilly v. New York Times,* 692 F.2d 863 (2d Cir.1982) (holds order denying discharge of counsel and request to proceed *pro se* immediately appealable) *with Flora Constr. Co. v. Fireman's Fund Ins. Co.,* 307 F.2d 413 (10th Cir.1962) (without discussion, holds order denying motion to proceed *pro se* on behalf of corporation not immediately appealable), *cert. denied,* 371 U.S. 950, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963).

Precedent aside, we conclude that the order in the instant case fits neatly within the scope of the collateral order exception. First, the district court's order finally concluded the question of Devine's *pro se* appearance; it required Devine to appear through Blackmore or to retain appropriate alternate counsel[10] and did not suggest that Devine might later be able to take over the case himself.[11]

---

[9]Our *Reshard* case was vacated so that the merits of the panel's decision could be reconsidered en banc. *See* 839 F.2d at 1500 (Tjoflat, J., dissenting) (noting reason for en banc consideration). On the merits, the en banc court could not reach a majority decision, resulting in the district court being affirmed by operation of law, and leaving no binding circuit precedent on point. Given the procedural posture of *Reshard* and its persuasive reasoning, however, the opinion informs much of our analysis.

[10]The order states: "The complexity of this action demands that Plaintiffs be represented by counsel. Therefore, counsel will be permitted to withdraw only where substitute counsel is named in the motion." Order of June 24, 1995.

[11]The order is therefore distinguishable from orders that do not reject conclusively a party's claimed right. For instance, in *Holt v. Ford,* 862 F.2d 850 (11th Cir.1989) (en banc), we found an order denying appointed counsel to an indigent § 1983 plaintiff was not a final rejection of a claimed right because the district court could reconsider its decision if the litigation proved to be

Second, the validity of the district court's order is separate from the merits of the underlying claim. Devine argues that he has a right to represent his son in federal court under 28 U.S.C. § 1654, Fed.R.Civ.P. 17(c), and IDEA. Thus, assessing the propriety of this interlocutory issue will turn on our interpretation of those statutes and rules. *See, e.g., DeSisto College, Inc. v. Line,* 888 F.2d 755, 763 (11th Cir.1989) (appeal challenging sanctions under Fed.R.Civ.P. 11 is separable from merits of underlying civil rights claim), *cert. denied,* 495 U.S. 952, 110 S.Ct. 2219, 109 L.Ed.2d 544 (1990); *Rives v. Franklin Life Ins. Co.,* 792 F.2d 1324, 1327 (5th Cir.1986) (appeal challenging disqualification of trustee requires interpretation of state statute regarding trustees and is separable from merits of underlying insurance dispute). Consequently, immediate review will not involve us in the subject matter of the lawsuit, namely, whether John was wrongly denied appropriate educational services. *Cf. Holt v. Ford,* 862 F.2d 850, 853 (11th Cir.1989) (en banc) (order denying appointed counsel in *in forma pauperis* civil rights action not separable because decision to appoint counsel requires consideration of legal and factual complexity of case on the merits).[12]

The third prong of the *Cohen* analysis—that the order appealed from be effectively unreviewable after final judgment—gives us the most pause. Specifically, because the Supreme Court has limited interlocutory appeals of orders regarding representation, we question whether the instant appeal is untimely. In a trilogy of cases, the Court refused to permit immediate appeals of various orders involving disqualification of trial counsel. *See Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (order denying motion to disqualify opposing counsel in civil case); *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (order granting motion to disqualify defense counsel in criminal case); *Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (order granting motion to disqualify opposing counsel in civil case). These decisions suggest that

---

more involved than initially anticipated. By contrast, as a case proceeds toward a conclusion with counsel, it is unlikely that a court will interrupt the proceedings to let a party represent himself/herself.

[12]Unlike the request for appointed counsel at issue in *Holt,* the right to proceed *pro se* does not depend on the factual or legal complexity of the case.

representation-related orders are either fully reviewable on final appeal, thereby violating the un-reviewability prong of *Cohen,* or are subject to review for prejudicial error, thus requiring an appellate court to investigate the merits of the underlying dispute, in violation of *Cohen* 's separability requirement.[13]

We conclude that the foregoing analysis is inapplicable to orders denying a party the right to proceed *pro se.* Although we recognize that a trial court's order requiring counsel is in part remediable after final judgment, given our "usual authority to vacate the judgment appealed from and order a new trial," *Firestone,* 449 U.S. at 378, 101 S.Ct. at 675, we believe that the right to represent one's self is effectively lost if not immediately vindicated. The harm in erroneously denying a party leave to proceed *pro se* is that it injures his/her dignity and autonomy, and this harm cannot be repaired after a judgment on the merits. *See McKaskle v. Wiggins,* 465 U.S. 168, 178, 104 S.Ct. 944, 951, 79 L.Ed.2d 122 (1984) ("The defendant's appearance in the status of one conducting his own defense is important in a criminal trial, since the right to appear *pro se* exists to affirm the accused's individual dignity and autonomy.").[14] Moreover, this harm exists quite apart from any prejudice a party might incur from trying his/her case with an unwanted attorney; that is, the affront to a litigant's right to conduct the case would persist even if the party were granted a new trial

---

[13]For instance, in *Flanagan,* 465 U.S. at 268, 104 S.Ct. at 1056, the Court stated:

> [I]f establishing a violation of [petitioners'] asserted right requires no showing of prejudice to their defense, a pretrial order violating the right does not meet the third condition for coverage by the collateral order exception: it is not "effectively unreviewable on appeal from a final judgment."
>
> * * *
>
> If, on the other hand, petitioners' asserted right is one that is not violated absent some specifically demonstrated prejudice to the defense ... the second *Coopers & Lybrand* condition—that the order be truly collateral—is not satisfied.... Its validity cannot be adequately reviewed until trial is complete.

[14]Although *McKaskle* involved a criminal defendant's constitutional right of self-representation, "the right to proceed *pro se* under 28 U.S.C. § 1654, is a fundamental statutory right that is afforded the highest degree of protection. It is a right which is deeply rooted in our constitutional heritage, and although statutory in origin, "[i]ts constitutional aura is underscored by the proposal the very next day of the Sixth Amendment,' to the U.S. Constitution." *Reshard,* 819 F.2d at 1579 (quoting *United States v. Dougherty,* 473 F.2d 1113, 1123 (D.C.Cir.1972)).

because of an erroneous denial of *pro se* status.[15]

An order denying self-representation is analogous to other orders courts have found immediately appealable. Specifically, orders denying a litigant leave to proceed *in forma pauperis* or denying intervention as of right fit within the collateral order exception. *Roberts v. United States Dist. Court for the N. Dist. of Cal.,* 339 U.S. 844, 845, 70 S.Ct. 954, 955, 94 L.Ed. 1326 (1950); *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.,* 331 U.S. 519, 524-25, 67 S.Ct. 1387, 1390, 91 L.Ed. 1646 (1947). Each of these orders effectively closes the courthouse door to litigants. Similarly, an order prohibiting a party from appearing *pro se* will practically bar indigent litigants from prosecuting their cases.[16] *See Reshard,* 819 F.2d at 1580.

In light of the foregoing, we conclude that the district court's order is effectively unreviewable on appeal from final judgment and, therefore, we have jurisdiction over this appeal.

III.

Turning to the merits of this appeal, we first conclude that neither 28 U.S.C. § 1654 nor Fed.R.Civ.P 17(c), cited by Devine, permits a parent to represent his/her child in federal court. Section 1654 authorizes parties in federal cases to "plead and conduct their own cases personally or by counsel," but is inapposite because it does not speak to the issue before us—whether Devine may plead or conduct his son's case.[17] Likewise, Rule 17(c) is unavailing; it permits authorized representatives, including parents, to sue on behalf of minors, but does not confer any right upon such representatives to serve as legal counsel. *See, e.g., Osei-Afriyie v. Medical College of Penn.,*

---

[15]*But see Flanagan,* 465 U.S. at 267-68, 104 S.Ct. at 1055-56 (dicta) (implying non-appealability of erroneous denial of right to self-representation in criminal case).

[16]Thus, an order denying *pro se* status is distinguishable from one denying an *in forma pauperis* § 1983 or Title VII litigant appointed counsel, which we have held to be unappealable under *Cohen. Holt v. Ford,* 862 F.2d 850 (1989) (en banc); *Hodges v. Department of Corrections,* 895 F.2d 1360 (1990). An indigent party aggrieved by the former order cannot advance his/her case, but one harmed by the latter order can (by appearing *pro se* ).

[17]We note that Devine is also a plaintiff in this matter. Thus, section 1654 permits him prosecute his own case in district court without benefit of counsel, in appropriate circumstances. *See Cross v. United States,* 893 F.2d 1287, 1291 n. 10 (11th Cir.)(dicta) (denial of "eleventh hour" request to proceed *pro se* may be appropriate), *cert. denied,* 498 U.S. 849, 111 S.Ct. 138, 112 L.Ed.2d 105 (1990); *O'Reilly v. New York Times Co.,* 692 F.2d 863, 867 (2d Cir.1982) (request to proceed *pro se* must be timely, whether made in criminal or civil case).

937 F.2d 876, 882-83 (3d Cir.1991) (neither section 1654 nor Rule 17(c) permits non-lawyer parent to represent child in federal court); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990) (same); *Meeker v. Kercher,* 782 F.2d 153, 154 (10th Cir.1986) (same).

We also cannot agree with the argument that IDEA compels a contrary result in this case. First, Devine cites two cases, *Mountain View—Los Altos Union High Sch. Dist. v. Sharron B.H.,* 709 F.2d 28 (9th Cir.1983), and *Vander Malle v. Ambach,* 673 F.2d 49 (2d Cir.1982), for the proposition that IDEA accords parents the right to bring actions on behalf of their disabled children. We agree with the proposition, but it is irrelevant to the present inquiry; like Rule 17(c), IDEA allows parents to sue in their children's stead, but does not authorize them to act as counsel in such a lawsuit. We are aware of no authority permitting non-lawyers to represent their children *pro se* in cases brought pursuant to IDEA.[18]

Devine's second IDEA claim is that the statute and regulations promulgated thereunder authorize parental representation. Although it is true that parents have the right to present evidence and examine witnesses in due process hearings held pursuant to IDEA, *see* 20 U.S.C. § 1415(d)(2); 34 C.F.R. § 303.422(b)(2), there is no indication that Congress intended to carry this requirement over to federal court proceedings. In the absence of such intent, we are compelled to follow the usual rule—that parents who are not attorneys may not bring a *pro se* action on their child's behalf—because it helps to ensure that children rightfully entitled to legal relief are not deprived of their day in court by unskilled, if caring, parents.[19]

IV.

---

[18]The published cases under IDEA (and its precursor, the Education for All Handicapped Children Act) involving *pro se* representation by parents are distinguishable from the present case because they involved parents who were attorneys. *Kattan by Thomas v. District of Columbia,* 995 F.2d 274, 275 (D.C.Cir.1993)(lawyer-father represented family in *pro se* action), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 71 (1994); *Rappaport v. Vance,* 812 F.Supp. 609, 612 (D.Md.1993) (same), *appeal dismissed,* 14 F.3d 596 (4th Cir.1994); *Ahern v. Keene,* 593 F.Supp. 902, 904 n. 1 (D.Del.1984) (same).

[19]For instance, we note that the school board in this case moved the district court to dismiss the Devines' action on abstention grounds. The Devines, through counsel, responded and succeeded in avoiding dismissal. A non-lawyer parent, though perhaps the most competent person to present evidence relevant to his/her child's disability at a due process hearing, would be ill-equipped to contest a motion based on such a difficult issue.

Accordingly, the order of the district court denying Devine's motion to represent his son is AFFIRMED.

HARRIS, Senior District Judge, dissenting:

I respectfully dissent from the majority's conclusion that we have jurisdiction over an interlocutory order denying a party leave to represent his child *pro se.* I agree with the majority that we may not review such an order pursuant to the statutory provisions of 28 U.S.C. § 1291 or 28 U.S.C. § 1292(a) or (b). However, I cannot agree that the collateral order exception confers jurisdiction upon us in this case.

As the majority notes, the collateral order doctrine is a narrow exception to the finality requirement of 28 U.S.C. § 1291. *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The Supreme Court has emphasized the importance of the final judgment rule and the consequent rarity with which departures from it are appropriate. *Flanagan v. United States,* 465 U.S. 259, 265, 104 S.Ct. 1051, 1055, 79 L.Ed.2d 288 (1984) ("The importance of the final judgment rule has led the Court to permit departures from the rule "only when observance of it would practically defeat the right to any review at all.'" (internal citation omitted)).[1] In order to fit within the strict confines of the collateral order doctrine, a non-final order must "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (internal citations omitted). An order denying a party's motion to proceed *pro se* on behalf of his child fails to meet the third element of the *Coopers & Lybrand* test, *i.e.,* that the order be effectively unreviewable on appeal from a final judgment.

_____

[1]In *Flanagan,* the Supreme Court stated:

> The final judgment rule serves several important interests. It helps preserve the respect due trial judges by minimizing appellate-court interference with the numerous decisions they must make in the pre-judgment stages of litigation. It reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals. It is crucial to the efficient administration of justice. (*Id.* at 263-64, 104 S.Ct. at 1054.)

In order to satisfy the third prong of the collateral order doctrine, an appellant must demonstrate that "denial of immediate review would render impossible any review whatsoever." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 376, 101 S.Ct. 669, 675, 66 L.Ed.2d 571 (1981) (internal citation omitted). This requirement is met where "the legal and practical value of [the asserted right] would be destroyed if it were not vindicated before trial." *Id.* at 377, 101 S.Ct. at 675 (internal citation omitted). Unless an order "represent[s] a final rejection of a claim of a fundamental right that cannot effectively be reviewed following judgment on the merits," the Court has concluded that it does not fall within the small class of cases which meet the third requirement of the collateral order doctrine. *Id.,* at 377, 101 S.Ct. at 675.

Although the Supreme Court has not directly addressed the issue of whether the denial of leave to proceed *pro se* is immediately appealable, it has consistently rejected such interlocutory appellate jurisdiction in the analogous area of orders which implicate a party's right to the choice of counsel. The Court has "strictly applied [the collateral order doctrine] test when parties pursued immediate appeal of trial court rulings on motions to disqualify counsel." *Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 430, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985). *See Flanagan,* 465 U.S. at 269, 104 S.Ct. at 1057; *Firestone,* 449 U.S. at 379, 101 S.Ct. at 676.

In *Firestone,* the Court held that an order denying a motion to disqualify opposing counsel in a civil case was not subject to interlocutory appeal because it was reviewable upon a final judgment in the underlying litigation. *Firestone,* 449 U.S. at 379, 101 S.Ct. at 676. The Court noted that if, upon review of the order after final judgment in the case, the order were determined to be erroneous, any prejudice could be remedied by vacating the judgment and ordering a new trial. *Id.* at 377-78, 101 S.Ct. at 675.

In *Flanagan,* the Court held that an order disqualifying a criminal defendant's counsel was not immediately appealable under the collateral order doctrine. 465 U.S. at 270, 104 S.Ct. at 1057. The Court stated:

> Petitioners correctly concede that postconviction review of a disqualification order is fully effective to the extent that the asserted right to counsel of one's choice is like, for example, the Sixth Amendment right to represent oneself. Obtaining reversal for violation of such a right does not require a showing of prejudice to the defense, since the right reflects

constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding.... In sum, as petitioners concede, if establishing a violation of their asserted right requires no showing of prejudice to their defense, a pretrial order violating the right does not meet the third condition for coverage by the collateral-order exception: it is not "effectively unreviewable on appeal from a final judgment." (*Id.* at 267-68, 104 S.Ct. at 1056 (internal citations omitted).)

Alternatively, the Court noted that if a specific showing of prejudice were required to demonstrate a violation of petitioners' asserted rights, the challenged order would fail the second prong of the collateral order doctrine test—separability from the merits of the case. *Id.* at 268-69, 104 S.Ct. at 1056-57. Accordingly, regardless of whether petitioners were required to demonstrate prejudice in order to show a violation of their asserted right, the order would not satisfy the collateral order doctrine.

Finally, in *Richardson-Merrell,* the Court held that an order disqualifying counsel in a civil case was not subject to interlocutory appeal under the collateral order doctrine. *Richardson-Merrell,* 472 U.S. at 440-41, 105 S.Ct. at 2766. The Court rejected the lower appellate court's attempt to distinguish the *Flanagan* Court's analysis of the prejudice question on the grounds that the *Flanagan* decision dealt with a criminal case.[2] Instead, the Court adopted the *Flanagan* analysis with regard to prejudice: "If a showing of prejudice is a prerequisite to reversal, then the ruling is not "completely separate' from the merits because it cannot be assessed until a final judgment has been entered; on the other hand, if a showing of prejudice is not required, then the ruling can be effectively reviewed on appeal of the final judgment." *Richardson-Merrell,* 472 U.S. at 436-37, 105 S.Ct. at 2764 (citing *Flanagan,* 465 U.S. at 267-69, 104 S.Ct. at 1055-57). Accordingly, the Court held that orders disqualifying counsel in civil cases are not collateral orders subject to interlocutory

---

[2]The Court of Appeals had taken the position that *Flanagan* strictly applied the final judgment rule and very narrowly applied the collateral order exception because of the criminal nature of the case. Concluding that the *Flanagan* Court's focus in denying interlocutory appellate jurisdiction had been on the potential for delay inherent in the grant of an interlocutory appeal, the lower court noted that delay is a much more severe problem in the criminal context than in the civil context. Rejecting this attempt to distinguish *Flanagan,* the *Richardson-Merrell* Court stated that "[a]lthough delay is anathema in criminal cases, it is also undesirable in civil disputes, as the Court of Appeals itself recognized. One purpose of the final judgment rule embodied in § 1291 is to avoid the delay that inherently accompanies time-consuming interlocutory appeals." 472 U.S. at 433-34, 105 S.Ct. at 2762. It is apparent that the same risk of delay about which the *Richardson-Merrell* Court was concerned in the disqualification of counsel context is present here as well.

appeal. In doing so, the Court recognized the financial hardship that such a ruling might impose on a litigant, but declined "to "transform the limited exception carved out in *Cohen* into a license for broad disregard of the finality rule imposed by Congress in § 1291.' " *Id.* at 440, 105 S.Ct. at 2766 (internal citation omitted).

Reviewing those Supreme Court precedents, it seems clear that an order denying a party leave to proceed *pro se* does not fall within the narrow class of rulings which are immediately appealable under the collateral order doctrine.[3] The Supreme Court concluded in both *Flanagan* and *Richardson-Merrell* that "if a showing of prejudice is not required, then the ruling can be reviewed on appeal of the final judgment." *Richardson-Merrell,* 472 U.S. at 437, 105 S.Ct. at 2764 (citing *Flanagan,* 465 U.S. at 267-69, 104 S.Ct. at 1055-57). Accordingly, such an order would fail to satisfy the third prong of the *Coopers & Lybrand* test and, thus, would not be subject to interlocutory appeal. In *Flanagan,* the Court stated that obtaining reversal for the violation of the Sixth Amendment right to represent oneself "does not require a showing of prejudice to the defense, since the right reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding." *Flanagan,* 465 U.S. at 268, 104 S.Ct. at 1056 (citation omitted). Thus, an order violating the Sixth Amendment right to represent oneself is reviewable

---

[3]The majority cites three circuit cases in support of its conclusion that an order of the type at issue is immediately appealable. *Reshard v. Britt,* 819 F.2d 1573, 1580-81 (11th Cir.1987), *vacated,* 831 F.2d 222 (11th Cir.1987) (*en banc* ); *C.E. Pope Equity Trust v. United States,* 818 F.2d 696, 697 (9th Cir.1987); *O'Reilly v. The New York Times Co.,* 692 F.2d 863, 866-67 (2d Cir.1982). However, none is persuasive.

*Reshard,* on which the majority essentially bases its analysis, was vacated by the *en banc* court and therefore is not binding. *C.E. Pope Equity Trust* simply concludes without discussion that an order denying a petitioner the right to proceed *pro se* fits within the collateral order doctrine and is immediately appealable. *Id.* at 697. Primarily, *O'Reilly* based its holding of immediate appealability on the difficulty which an appellant would have in demonstrating that prejudice resulted from an erroneous order upon review of a final judgment. *O'Reilly,* 692 F.2d at 866-67. However, *Richardson-Merrell,* which was decided after *O'Reilly,* makes it clear that if a petitioner must demonstrate prejudice in order to obtain reversal of an order violating an asserted right, then the order at issue violates the separability prong of the *Coopers & Lybrand* test and if prejudice is not a prerequisite to obtaining reversal, then the unreviewability prong of the test is not satisfied. *Richardson-Merrell,* 472 U.S. at 436-37, 105 S.Ct. at 2764-65. Indeed, the *Reshard* panel (again, whose opinion was vacated) acknowledged that much of *O'Reilly* 's reasoning had been undercut by *Richardson-Merrell. Reshard,* 819 F.2d at 1579.

upon a final judgment and is not properly subject to interlocutory appeal.

Although the right to proceed *pro se* in the civil context is statutory, rather than constitutional as is the Sixth Amendment right discussed in *Flanagan,* the same interests would be harmed by an erroneous order denying a party leave to proceed *pro se.*[4] As the majority notes, such an order harms what has been characterized as a party's autonomy and dignity interests. *See McKaskle v. Wiggins,* 465 U.S. 168, 178, 104 S.Ct. 944, 951, 79 L.Ed.2d 122 (1984) (noting that the Sixth Amendment right to appear *pro se* in a criminal case "exists to affirm the accused's individual dignity and autonomy.") In *Flanagan,* the Court recognized that the right to proceed *pro se* encompasses not only a due process concern but an independent autonomy interest as well. *Flanagan,* 465 U.S. at 267-68, 104 S.Ct. at 1056. The Court concluded, however, only that such an independent interest would exempt a petitioner from a required showing of prejudice in order to obtain reversal. *See McKaskle,* 465 U.S. at 177, n. 8, 104 S.Ct. at 951, n. 8 (noting that a denial of the right to proceed *pro se* is not amenable to harmless error analysis because "[t]he right is either respected or it is not."). *See also Faretta v. California,* 422 U.S. 806, 836, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (stating that there is no need to evaluate a *pro se* party's mastery of legal procedure because such an assessment is not necessary to determine whether a criminal defendant knowingly exercised his right to proceed *pro se* ). The Court did not conclude that such an independent interest would justify interlocutory appellate jurisdiction on the ground that the interest would otherwise be destroyed. Indeed, the Court stated just the opposite—that where prejudice need not be shown for reversal, the final prong of the *Coopers & Lybrand* test is not satisfied. *Flanagan,* 465 U.S. at 267-68, 104 S.Ct. at 1056.

Furthermore, the autonomy interest in proceeding *pro se* identified by the majority is particularly weak—indeed, if present at all—in this case because, as noted, appellant William Devine is not requesting the right just to represent himself, but is seeking to represent his son *pro se.* The majority rather uniquely assumes for the purposes of its jurisdictional analysis that Devine

---

[4]It should be borne in mind that there is more than a little artificiality here, in that the crux of this case is Devine's desire to dismiss retained counsel and represent his own son.

has such a right. However, that assumption is inappropriate because the autonomy interest—which the majority asserts makes the challenged order unreviewable upon final appeal and catapults it into the narrow confines of the collateral order exception—clearly depends upon whether appellant Devine has any right to represent his son *pro se.* A party unquestionably has a right to appear *pro se* in his own case, but has no right to appear in effect as an attorney on the behalf of someone else. *C.E. Pope Equity Trust,* 818 F.2d at 697. I agree with the majority's conclusion in Part III of its opinion that neither the Federal Rules of Civil Procedure nor the IDEA create an exception to this general rule. Accordingly, appellant William Devine simply has no autonomy interest in proceeding *pro se* on behalf of his son.[5]

The majority next takes the position that the denial of the motion of William Devine to proceed *pro se* affects an interest separate from the dignity and autonomy interest identified above, namely, an interest in access to the judicial system. The majority equates an order denying leave to proceed *pro se* with orders denying leave to proceed *in forma pauperis* and denying intervention as of right—both of which are subject to interlocutory appeal—because each of the three supposedly "closes the courthouse door" to non-prevailing litigants. *See Roberts v. United States Dist. Court for the N. Dist. of Cal.,* 339 U.S. 844, 845, 70 S.Ct. 954, 955, 94 L.Ed. 1326 (1950) (per curiam) (permitting without discussion interlocutory review under the collateral order exception of an order denying a party *in forma pauperis* status); *Brotherhood of R.R. Trainmen,* 331 U.S. 519, 524-25, 67 S.Ct. 1387, 1390 (permitting interlocutory appeal of an order denying intervention as of right).[6]

---

[5] I recognize that this is somewhat of a contradiction of terms, but that is how it is dealt with by the majority.

[6] The persuasive nature of these cases in the *pro se* context is severely limited. First, both opinions were written long before the currently controlling three-prong test was established by *Coopers & Lybrand. Brotherhood of R.R. Trainmen* was decided prior to *Cohen,* which formally established the collateral order exception, and *Roberts* was decided only a year after *Cohen.* It also should be noted that the district court in *Brotherhood of R.R. Trainmen* "allowed an appeal ... from its order denying intervention," an action which suggests a somewhat different basis of appellate authority than that which would later become the collateral order doctrine. *Brotherhood of R.R. Trainmen,* 331 U.S. at 523-24, 67 S.Ct. at 1389. Additionally, although the Court determined that it had jurisdiction because the denial of intervention as of right was sufficiently final to permit appeal, the Court did not explicitly apply the principles which later would be established in *Cohen. Id.,* at 523-25, 67 S.Ct. at 1389-90. For instance, there is no discussion of a separability requirement as there is in *Cohen.* Furthermore, the *Roberts* Court

I also find unpersuasive the majority's assertion that an expansion of the collateral order doctrine is necessary because orders denying leave to proceed *pro se* "will practically bar indigent litigants from prosecuting their cases."  Op. at 3303 (citing the vacated *Reshard* opinion, 819 F.2d at 1580).  The majority takes the position that an indigent litigant's interest in access to the judicial system necessarily and finally would be destroyed by an order denying leave to proceed *pro se.*  This simply is not so (and here, of course, there has been no determination that Devine is indigent).  A trial court may appoint counsel or, where there is existing counsel, require counsel to continue representation of the presumably newly indigent party.  Finally, an indigent party may be able to obtain *pro bono* representation on his own.  Accordingly, appellants' interest in access to the judicial system does not provide a valid basis for the application of the collateral order exception.

In sum, I believe that an order denying the right to proceed *pro se* does not fall within the collateral order exception because it fails the third prong of the *Coopers & Lybrand* test, which requires that the order immediately destroy a fundamental right which cannot be rectified upon review of a final judgment.  Supreme Court precedent in the analogous area of orders affecting litigants' autonomy interests in choosing their own counsel dictate that such orders do not satisfy the *Coopers & Lybrand* test.  There is no reason why the same conclusion should not be reached regarding the autonomy interest in self-representation which would be affected by the denial of leave to proceed *pro se.*  Moreover, here the petitioning party has no autonomy interest at stake since he does not seek the right to represent himself, but rather a third person, albeit his son.  Finally, there is no merit to the argument that the denial of leave to proceed *pro se* destroys the petitioning party's

---

simply asserts without discussion that orders denying *in forma pauperis* status are immediately appealable under the collateral order exception.  *Roberts,* 339 U.S. at 845, 70 S.Ct. at 954. Neither of these opinions, which were written in the embryonic stage of the collateral order doctrine, provides clear guidance as to the application of the doctrine.

      In contrast, the Supreme Court precedent relied on in this dissent details its application of the *Coopers & Lybrand* test.  These later opinions emphasize the importance of the final judgment rule and the consequent narrowness of the collateral order doctrine.  The same concerns regarding judicial economy, the independence of the trial court, and delay which compelled the Court to reject the expansion of the collateral order doctrine to include interlocutory appeal of disqualification orders assuredly are relevant in the *pro se* context.

interest in access to the judicial system since such an order does not necessarily preclude the acquisition of representation through other means. Accordingly, I conclude that an order denying leave to proceed *pro se* is reviewable upon review of a final judgment and that the collateral order doctrine does not apply. Hence, I respectfully dissent, believing that we should dismiss this case for lack of jurisdiction.[7]

---

[7]Assuming *arguendo* that the majority is correct in its jurisdictional analysis, I would concur in Part III of the majority opinion, affirming the trial court's order.